EDWARDS HOTEL & CITY STREET RAILROAD COMPANY *v.* CITY OF JACKSON.

[51 South. 802.]

1. STREET RAILROADS. *Municipal franchises. Rights acquired.*

    A street railroad company obtaining a municipal franchise acquires nothing more than the municipality can lawfully grant.

2. MUNICIPALITIES. *Power of mayor and board of aldermen. Cannot bind successors. Code 1892, § 2925 et seq.*

    The powers delegated to a municipality by Code 1892, § 2925 et seq., conferring on the mayor and board of aldermen the control of the municipality and its property, with power to adopt ordinances for purposes named, and to alter, modify, and repeal ordinances, and providing that the powers granted shall be held and exercised by the mayor and board of aldermen as trustees for the munici-

pality, are given for the benefit of the municipality, and are to be exercised in the discretion of the mayor and board of aldermen in office at the .time, and each mayor and board of aldermen may in their discretion determine when the powers shall be exercised, and one mayor and board of aldermen may not bind their successors.

**3. SAME.** *Public improvements, surrender of power.*

A municipality cannot contract away its powers given by law, nor surrender its right to assess a part of the costs of paving streets on abutting property.

**4. SAME.** *Ordinances. Exemptions.*

Exemptions of any character claimed under a municipal ordinance can only be claimed when the intent to grant them is expressed in the clearest and most unambiguous terms.

**5. SAME.** *Same. Settlements and compromises.*

A municipality may compromise and settle its demands or suits against a street railroad company for paving done; but a stipulation in the articles of settlement undertaking to surrender its right thereafter to pave streets at the costs of abutting property cannot be. enforced, because the right cannot be contracted away.

**6. SAME.** *Estoppel. Ultra vires contracts. Knowledge.*

An *ultra vires* contract, made with municipal officers, does not estop the municipality, since all persons dealing with it is charged with knowledge of the law governing it and limiting the power of its officers.

**7. SAME.** *Streets. Paving. Local assessment. Street railroad.*

A railroad company having a franchise to operate its railroad in a street has property rights therein which are subject to local assessment for a municipal improvement.

**8. SAME.** *Street railroad. Paving tracks. Work done by municipality. Recovery of expenses.*

A municipality, desiring to pave a street on which street car tracks are maintained under a franchise, must grant to the street railroad company the right to lay the pavement for itself; and the company is not liable for the cost of pavement laid by the city without previous notification to the company to lay the same.

**9. SAME.** *Right of property owner to make improvements.*

A municipality has no power to pave a street at the cost of abutting property until after notification to and refusal by abutting owners to do the paving.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, chancellor.

The city of Jackson, appellee, was complainant in the court below; the street railroad company, appellant, was defendant there. From a decree in complainant's favor the defendant appealed to the supreme court.

In 1909 the city began this suit praying for a mandatory injunction to compel the street railroad company to pave its tracks on certain streets designated in an ordinance of the city. The railroad company claimed exemption from so doing under a contractual ordinance passed in 1906, by the terms of which it was agreed that upon compliance with certain requirements stipulated by the city the railroad company should not be required to do paving for a period of ten years. This ordinance was passed as a compromise of a suit then pending to collect from the railroad company the cost of other paving done by the city on a street along which the tracks of the railway were laid, and which suit was defended by the railroad company on the ground that its franchise granted by the city exempted it from paving. The franchise contains the following among other sections, to wit:

"Sec. 7. That all tracks laid by said company, its associates, successors, and assigns, in said streets, are to be laid on the present customary and established grades thereof, except upon consent of the mayor, and all equipments, appliances, fixtures, and appurtenances erected for the operation of said railroad, shall be erected and constructed with reference to said customary established grades, subject, however, to be at all times temporarily taken up, removed, replaced, and relaid, at the expense of the city, whenever deemed necessary by the board of mayor and aldermen to temporarily take up and remove the same, for the purpose of grading, regrading, paving, making any public or private improvement, or otherwise improve said street, or any part thereof."

"Sec. 15. That whenever the city determines to make any improvement or repair, such as the repair or construction of sewers, or water pipe, or other public work, or in grading and repairing or paving of any of its streets, avenues, alleys, public grounds or highways, or in the changing of the present established, customary grade or grades, and in making such improvement or repairs, it becomes necessary to temporarily take up, remove, or interfere with any of the tracks, poles, wires, turnouts, turn-tables, connections or any part or parcel of said railroad, that the city shall pay all the costs and expenses incident thereto or in connection therewith, including the cost of replacing and refitting such equipment as has been interfered with.

"Sec. 16. The city of Jackson shall and will, at all times, maintain its streets, highways, and bridges in good and proper condition and repair so as to enable the said company, its associates, successors and assigns, to use, operate and maintain its railroad and other rights and property, and whenever any bridge over which said company, its associates, successors, and assigns, operates its railroad, becomes unsafe for the operation of said railroad thereon, said city shall and will repair or reconstruct the same at its own expense, provided said company, its associates, successors, and assigns, pays in cash to said city, a sum equal to one-fourth the actual construction of all that portion of such bridge or bridges, above the abutments or bents thereof, except said company, its associates, successors, and assigns, shall not be required to pay any part of the cost of the construction of the bridge over Town creek on Capitol street."

*Williamson & Wells,* for appellant.

It is well settled that an ordinance granted by the city to a street railroad company to construct and operate a street railroad within the corporate limits of a city, constitutes a contract between such railroad company and the city. *Chicago v. Shel-*

don, 76 U. S. 50; *Coastline R. Co. v. Savannah,* 30 Fed. 646; *State v. Corrigan, C. S. R. Co.,* 85 Mo. 263; *Dist. of Columbia v. Washington & G. R. Co.,* 4 Am. & Eng. R. Cas. 174; *Farrar v. St. Louis,* 80 Mo. 379; *N. O. Gaslight Co. v. La. L. & H. Co.,* 115 U. S. 660; *Greenwood v. Union, etc., R. Co.,* 105 U. S. 13; *New Jersey v. Yard,* 95 U. S. 104; *Birmingham, etc., St. R. Co. v. Birmingham,* 79 Ala. 465, 58 Am. Rep. 615; *City R. Co. v. Citizens' St. R. Co.,* 52 N. E. 157; *E. La. R. Co. v. New Orleans,* 15 South. 157; *Browne v. Turner,* 56 N. E. 969; *Davidge v. Binghampton,* 71 N. Y. Supp. 225; *Cleveland v. Cleveland Elec. R. Co.,* 1 Ohio N. P. 413; *City R. Co. v. Citizens,* 166 U. S. 557; *Sioux City St. R. Co. v. Sioux City,* 138 U. S. 98; *Shreveport v. Shreveport,* 47 South. 40.

After reading and considering the ordinance of the city passed on April 5, 1898, it can scarcely be doubted by the court that it was the purpose and intention of the city of Jackson to relieve the street railroad company of any obligation to pave or repair the streets at any time in the future. In fact, it is generally known that at the time of the passage of this ordinance, it was distinctly understood that the street railroad would not have been built except upon the insertion in the ordinance of a provision which would exempt it from any obligation to pave the streets, and therefore the several provisions were so inserted. It was the intense desire of the municipality to secure the construction of this railroad, and at the time it was thought to be a losing venture and the city was willing to make almost any sort of contract which would result in the building and equipment of the street railroad. The provisions of the ordinance as to the paving of the streets may not have been wise provisions, but, as to the fact that these ordinances did in fact undertake to exempt the street railroad company from any obligation to ever pave the streets, or to keep them in repair there is not now, and never has been any doubt.

In the absence of the stipulation that the city would always

keep the streets in repair it would seem that the law would have imposed upon the company the duty to repair, but not to improve.

The law upon this subject, supported by a long list of authorities is thus stated by Judge Elliott in his valuable work on Roads and Streets, at page 594:

"As much as can be safely affirmed in the present state of the decided cases is that private corporations are bound to repair, but not bound to improve. They are bound to restore, but not to change. * * * It would not, as we interpret the rule sustained by the weight of authority, be compelled to make a new pavement, but it would be its duty, in making repairs after the new pavement was laid, to made them correspond to the new pavement."

In the instant case, even the duty to repair was undertaken and assumed by the city.

The city was desirous of having this street railroad built on account of the benefits to accrue therefrom to the inhabitants of the city, and so anxious was the city that the street railroad should be built and maintained, that it required the company to enter into a contract obligation to the effect that it should not have any right to maintain an electric lighting system except upon the condition that the street railroad was also maintained and operated.

The company complied with all of the stipulations and conditions of the ordinances and its full and complete compliance was duly recognized by the city in a resolution of the mayor and board of aldermen, and there is no pretense that the company has ever at any time forfeited any of the rights or franchises conferred upon it by the passage of the ordinances.

Under these conditions the city could not, by subsequent ordinance impose on the company without its consent, the additional obligation to pave the streets as is clearly held by the authorities cited *supra*.

In the leading case of *Chicago v. Sheldon,* 76 U. S., 9 Wall. 50, 19 L. Ed. 594, it was held by the supreme court of the United States, the court of last resort upon questions of this kind, that the company could not be held liable for improvements made on the streets occupied by its railroad and that its obligation could only be extended to the duty of repairing the streets after they had been improved by the city.

The passage of that portion of the paving ordinances of 1902 which had reference to the street railroad company was a patent attempt upon the part of the city to repudiate its contract with the company, upon the faith of which the company had expended a very large sum of money not only in the erection of the street railroad plant and street railroad, but also a large electric lighting plant and system, which it cannot lawfully run except upon the condition that it also operate at the same time the street railroad in the city.

A small part of the street paving which was attempted to be required of the company was done by the city and a suit was instituted to test the right of the city to recover for the amount expended in so doing, which suit the company defended upon all of the grounds set out in its answer to the bill which is made exhibit hereto, and by reference to this answer the court will observe that the company not only resisted this suit upon the ground of its contract obligations with the city, but also brought into question the validity and binding effect of the paving ordinances, and the lack of sufficient notice, and many other defenses which are set forth in the answer.

While this suit was pending and undetermined, negotiations were begun between the representatives of the city and the company looking to a compromise settlement of the matters of difference between the city and the company and an agreement was finally reached whereby it was thought that these differences had been settled and compromised.

If there was ever any doubt as to the meaning and effect of

the original provision as to paving the streets as set forth in the ordinances of the city passed on April 5, 1898, there certainly cannot be any doubt as to the meaning of the ordinance which was afterwards passed in settlement of this lawsuit.

Under the original ordinance, the company claimed and now claims that it was explicitly exempted from the duty at any time of paving any part of the streets of the city and this undoubtedly was the purpose and effect of those ordinances. No other reasonable construction can be placed upon the language used in them. . It is well known that such was the desire and intention of the municipal authorities, and this fact has never at any time been disputed, and we take it that it will not now be disputed.

However, a compromise settlement was made upon terms and conditions which are fully set forth in the ordinance passed by the authorities of the city, which ordinance is made exhibit to the bill herein, and the company agreed that its original contract should be amended and modified as to the obligation to pave the streets, so that at the end of the period of ten years from January 1, 1906, certain obligations as to street paving should then rest upon the company, its associates, successors, and assigns.

This compromise settlement and this ordinance was passed to carry it into effect deliberately, and after full discussion of the whole matter. There is no pretense that it was not fully understood, and there cannot be any doubt as to the meaning of the ordinance.

Under the terms and conditions of this ordinance the company obligated itself to make large additional expenditures of money in the way of betterment and extension of its railroad system in the city, and in addition thereto to perform at its own further expense a large amount of work which it could not have been required to do under its original contract.

By this ordinance the company was required to submit to

an amendment to its original contract under which it was claimed that the company was exempt for all time from any obligation to pave the streets, so that the company would be required at the end of a ten year period to do very much paving in and around its tracks.

The bill in this cause shows affirmatively that the company accepted this ordinance in good faith, and that it has complied with all of its conditions.

The present suit is another effort on the part of the city of Jackson to repudiate its contract obligations, and in this instance it is to repudiate a contract which was made by the city and for which it received valuable considerations not only in money but in concessions.

The rule is well settled that an agreement of compromise is supported by a sufficient consideration where it is in settlement of a claim which is unliquidated or of a claim which is disputed or in settlement of a claim which is doubtful. *Fire Ins. Assn. v. Wickam,* 141 U. S. 564, 35 L. Ed. 860; *Long v. Shackleford,* 25 Miss. 559; *Boone v. Boone,* 58 Miss. 820.

A compromise and settlement when full and complete and fairly made operates as a merger of, and bars all right to, recovery on all claims and causes of action included therein. *Baker v. Kennon,* 88 Ala. 428; *Reynols v. Jones,* 63 Ark. 259; *Griswold v. Pieratt,* 110 Cal. 259; *Rogers Silver Plate Co. v. Jennings,* 35 Atl. 281; *Kelleher v. Chicago, etc., R. Co.,* 66 N. W. 94; *Escanaba Boom Co. v. Two Rivers, etc.,* 118 Mich. 454; *Philadelphia R. Co. v. U. S.,* 103 U. S. 703; *U. S. v. Coutou,* 102 U. S. 603.

In construing a compromise agreement the ultimate object is to arrive at the intention of the parties, which intention is to be determined from the contract itself. The compromise agreement is to be considered as ascertaining their respective rights and will in equity as between the parties furnish the basis for settling their rights.

A. compromise and settlement of a controversy based on a sufficient consideration, is as between the parties thereto, and as to the matters embraced therein, binding and conclusive where fairly made.   *Cleere v. Cleere,* 82 Ala. 581; *Shirey v. Beard,* 62 Ark. 621; *Oakland v. Oakland, Water Front Co.,* 118 Cal. 160; *Howard v. Pensacola R. Co.,* 5 South. 356; *Hamilton v. Stewart,* 108 Ga. 472; *Case v. Phillips,* 55 N. E. 66; *Moon v. Martin,* 122 Ind. 211; *Larned v. Dubuque,* 86 Iowa, 166; *Bent v. Weston,* 46 N. E. 386; *Darrell v. Dobbs,* 78 Miss. 912; *Roberts v. Ellwood,* 22 N. E. 453; *Flynn v. Hurlock,* 194 Pa. St. 462; *Pegues v. Hadenm,* 76 Tex. 94; *Gold v. Marshall,* 76 Va. 668.   See, also, 178 U. S. 353, 137 U. S. 556.

The bill and exhibits show on their face that in the year 1898, the city of Jackson passed ordinances authorizing the defendants to construct, maintain, and operate a street railroad system on and over the streets of the city, and that the said company, its associates, successors, and assigns were relieved, affirmatively, of any obligation to pave or repair the streets of the city, and that the city obligated itself to keep the streets in repair, and obligated itself not only to pay all costs incident to any paving which it might thereafter do, but also to pay any costs and expense incident to the temporary taking up, removal or change of grade of the street railroad.

The bill and exhibits further show that subsequently the said city of Jackson undertook to repudiate its said contract, and instituted a suit in the chancery court of the first district of Hinds county, and that while said suit was pending, a compromise agreement was entered into between the city and the company whereby the company submitted to an amendment and modification of its original contract, which amendment and modification does impose upon the company the duty to pave between its rails and tracks and for two feet on each side of the outside rail of each of its tracks, but postpones the performance of this duty until the expiration of the period of ten years after January 1, 1906.

The question to be determined by the court is, as to whether or not the city of Jackson will be permitted in a court of equity to repudiate its contractual obligations after having enjoyed the fruits of the contracts and after having received a valuable consideration from the company for all rights granted to it; whether or not the city of Jackson will be permitted to induce the expenditure of large sums of money on the establishment of enterprises of doubtful outcome by granting to the owners thereof, rights and privileges in the streets, and afterwards when the investment has been made to such an extent that the investors are without remedy, repudiate the contract and ignore the considerations upon which the enterprises were established; whether or not after having entered into a solemn and binding agreement of settlement and compromise whereby the city received large sums in the way of improvement on its streets, and inducing the company to surrender its contract rights and agree to an amendment and modification of its original contract, the city will be permitted to ignore its agreement of settlement and compromise, after having received all of the fruits thereof, and now impose upon the company burdens and impositions as to the paving of the streets, which the city itself by solemn ordinance has postponed for a period of ten years; whether or not the rule of common honesty which is required to be observed by individuals seeking relief in a court of equity shall be set aside for the benefit of the city of Jackson, and the city allowed to ignore and repudiate any and all of its contractual obligations.

If we should concede (which we do not) that a general law granting to cities and towns the powers which are contained in the chapter on municipalities as contained in our code, did not confer upon such municipalities the power to pass and enforce special ordinances suited to their local conditions, still the ordinances in question are not subject to any such objection. A special privilege in constitutional law is a right, power, franchise, immunity, or privilege granted to or vested in a person

or class of persons to the exclusion of others, and in derogation of common right. *Edwards House Co. v. Jackson*, 91 Miss. 429; *Daley v. Swope*, 47 Miss. 367; *Vasser v. George*, 47 Miss. 721; *Williams v. Cammack*, 27 Miss. 270; *Guthrie Daily Leader v. Cameron*, 3 Okla. 677, 41 Pac. 635. See especially *Plattsmouth v. Neb. Tel. Co.*, 14 L. R. A. (N. S.) 654.

The powers contained in the chapter on municipalities are full and complete in the city, and the construction and operation of the street railroad system in the city of Jackson was a public improvement which the city had long sought in vain, and which it could only obtain by the grant of the franchise which was granted on the 5th day of April, 1898. Every grant of right by the sovereign is subject to the police power of the state, but when accepted and acted upon, such grant becomes a contract, and, except for the exercise of the police power, it is protected from impairment by both the state and federal constitution. *Cit. St. R. R. Co. v. Memphis*, 53 Fed. 732; *Wis. Tel. Co. v. Oshkosh*, 62 Wis. 32; *Mich. Tel. Co. v. Benton Harbor*, 121 Mich. 512, 47 L. R. A. 104.

In granting to the company the right to use the streets for the construction and operation of a street railroad, and thus securing to the citizens the conveniences of a modern city, the board exercised not a legislative, but a business power. *Ill. Tr. & Sav. Bank v. Arkansas City*, 34 L. R. A. 518; *Wagner v. Rock Island*, 21 L. R. A. 519; *Vincennes v. Gaslight Co.*, 16 L. R. A. 485; *Walla Walla v. Walla Walla*, 172 U. S. 1, 43 L. Ed. 341; *Detroit Cit. St. R. Co. v. Detroit*, 26 L. R. A. 667.

The city having induced and permitted the company to expend large sums of money upon the mutual understanding that it had all of the rights and franchises contained in the said ordinances, cannot now deny the validity and existence of those rights. *Nash v. Lowrey*, 37 Minn. 264; Cooley Const. Lim. (4th ed.) 474; *Ashland v. Wheeler*, 88 Wis. 614; *Boone Co. v. Burlington*, 139 U. S. 693, 35 L. Ed. 322.

The principles of ratification by laches or delay is as applicable to a municipal corporation as it is to a private corporation or an individual.   1 Dillon Mun. Corp. (4th ed.) § 548; *Clark v. Washington,* 25 U. S., 12 Wheat. 40.

The ordinances and their acceptance constitute a contract, and ordinances which impair its obligations or rights vested thereunder, contravene the state and federal constitutions and are void.   *Billings v. Chicago,* 167 Ill. 340, 47 N. E. 732; *West Chicago R. Co. v. Chicago,* 53 N. E. 114; *Western Paving Co. v. Citizens, etc.,* 10 L. R. A. 775; *Com. v. Boston,* 97 Mass. 555; *People v. Deehan,* 47 N. E. 787; *Sub. Elec. Co. v. East Orange,* 41 Atl. 865; *Wilmington & W. Co. v. Reid,* 20 L. Ed. 568; *Penn Mut. Ins. Co. v. Austin,* 168 U. S. 694; *Stevens v. Muskegon,* 36 L. R. A. 777.

It has been held in many cases not necessary to cite, that the doctrine of estoppel applies in full force against municipalities the same as individuals, and if ever a case could arise in which a city should be estopped to take the action sought to be taken in this case, the facts and circumstances fully disclosed by the bills and exhibits herein would seem to point out this case as one in which the doctrine would be applied in full force.

The correct definition of equitable estoppel as given in Pomeroy's Equity Jurisprudence, vol. 2, par. 804, is as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This statement of the doctrine is quoted with approval in the following cases: *Martin v. Maine Cent. R. Co.,* 93 Me. 100; *Wilkins v. Gibson,* 113 Ga. 31, 84 Am. St. Rep. 204;

*Galbraith v. Lunsford,* 1 L. R. A. 522; *Edwards v. Dickson,* 66 Tex. 613.

To constitute an estoppel *in pais,* an actual fraudulent intent in making the representation is not necessary. It is enough that the person making it knows, or ought to know, the truth; that he intends or might reasonably anticipate, that the person to whom it is made, or to whom it is communicated, will rely and act on it as true; and that the latter has relied and acted on it, so that to permit the former to deny its truth will operate as a fraud. *Stevens v. Ludlum,* 13 L. R. A. 270.

In the case of *Fletcher v. Peck,* 3 L. Ed. 132, the following language is used by MARSHALL, C. J.:

"The principle asserted is that one legislature is competent to repeal any act which a former legislature was competent to pass; and that one legislature cannot abridge the powers of a succeeding legislature.

"The correctness of this principle, so far as respects general legislation can never be controverted. But, if an act be done under a law, a succeeding legislature cannot undo it. The past cannot be recalled by the most absolute power. Conveyances have been made; those conveyances have vested legal estates, and if those estate may be seized by the sovereign authority, still, that they originally vested is a fact, and cannot cease to be a fact. When, then, a law which is in its nature a contract, when absolute rights have vested under that contract, a repeal of the law cannot divest those rights; * * *

"It may well be doubted whether the nature of society and of government does not prescribe some limits to the legislative power; and, if any be prescribed, where are they to be found, if the property of an individual, fairly and honestly acquired, may be seized without compensation?

"Is a grant a contract? A contract is a compact between two or more parties and is either executory or executed. An

executory contract is one in which a party binds himself to do, or not to do, a particular thing; a contract executed is one in which the object of the contract is performed; and this says Blackstone, differs in nothing from a grant.    *    *    *

"A party is always estopped by his own grant."

A party to a contract cannot pronounce its own deed invalid, although that party be a sovereign state.

In the following cases among others it is held that a municipal corporation is estopped by its grant of a franchise, and that it cannot resume, modify or impair the obligation of the grant. *Coast Line R. Co. v. Mayor, etc.,* 30. Fed. 649; *St. Louis v. Western Union Tel. Co.,* 63 Fed. 70; *Stein v. Moble,* 20 Am. Rep. 285; *Los Angeles v. L. A. C. W. Co.,* 61 Cal. 69; *Mayor, etc. v. Houston,* 29 Am. St. Rep. 685.

As to the estoppel of a corporation to set up the plea of *ultra vires.* See, *Eastern Counties R. Co. v. Hawkes,* 35 Eng. L. & Eq. Cases, p. 9; *Holmes v. Holmes,* 127 N. Y. 252; *Ohio & M. R. Co.,* 96 U. S. 258, 24 L. Ed. 693.

The rule requiring the observance of good faith and fair dealing is as applicable to corporations as to individuals. Neither can involve others in onerous engagements, and with the consideration of the contract in their possession, disavow their acts to the damage and discomfiture of others, unless it clearly appears that there was an absolute want of capacity to make the contract. *L. & N. & C. R. Co. v. Flanagan,* 113 Ind. 488.

By the plainest principles of justice, corporations making contracts in such cases, and receiving the consideration and full benefit of the same, should not be allowed to defeat the obligations made by them therefor, or at least should not be permitted with impunity to appropriate the property of another, received by virtue of such contracts, and under the plea of *ultra vires* defeat any recovery therefor. 2 Herman, Estoppel,

§ 1179; *Gas Light Co. v. Chicago,* 20 Ill. App. 473; *Argenti v. San Francisco,* 16 Cal. 255; *Bank v. Elevator Co.,* 90 Mich. 550.

*Mayes & Longstreet* and *William Hemingway,* for appellee.

The court will observe that as a fact which is admitted by the demurrer, and a fact which is well known, the city of Jackson came under the municipal chapter of the Code of 1892 almost immediately after the adoption of that code. For that reason, the things under investigation in this cause are to be determined by the powers of the municipality, as prescribed in the code and limited thereby.

The court, in this connection, will note the general difference in municipal law which exists between the general powers of a municipal board over the paving of streets, and the power over the paving of sidewalks. We shall discuss the questions in this case from their strictly proper point of view, and shall endeavor not to confuse the two propositions.

Returning to the municipal chapter, we find that Code 1892, § 2944 (3335 of the Code of 1906), is the one which deals with sidewalks; and it authorizes municipalities to cause them to be constructed and maintained, and to levy and collect taxes by special assessment, for payment for same. It is useless to argue that this section is confined to sidewalks; we shall not dispute that proposition, but shall trace the authority of the municipal board in respect to streets through other sections.

It is Code 1892, § 2947 (3338 of the Code of 1906), which makes provision about streets, and confers "full jurisdiction" to open the same, etc.; to repair, maintain, pave, sprinkle, adorn and light the same. Here we have the full power given to pave the streets, accompanied by the declaration of "full jurisdiction."

So, also, by Code 1892, § 2955 (3346 in the Code of 1906), a general authority is given "to levy and collect special assessments and to issue bonds, as hereinafter provided."

The further provision contemplated is found in Code 1892, §§ 3011 to 3013 (sections 3411 to 3414 of the Code of 1906).

The second cause of demurrer assigned by the railroad company (which is the first ground of demurrer that is specific), relies upon the ordinance of the 5th day of April, 1898, and avers that "the said ordinance in terms relieved the said defendant of any obligation to pave any portion of said street."

Waiving, for the present, the question as to whether, under the laws and constitution of this state, as they existed in 1898, it was competent for the municipal board to make a contract of the nature insisted upon by the demurrer we now call the court's attention to the fact that there are no such terms in that ordinance; that the demurrer proceeds absolutely upon a misconception of the true scope of the provisions in the ordinance itself. No such agreement was by that ordinance assumed to be made.

The only paragraphs of the ordinance in question which could possibly bear on this discussion are sections 7, 15, and 16; but instead of containing any stipulation that the city will not exercise its rights and powers to impose taxes in the form of assessments for the street paving purposes, the obvious intent of the provisions contained in those sections is quite different.

To put it in a nutshell, the true intent and meaning is that, while the railroad company is required to put its tracks on the then existing grade, if, afterwards, the city should undertake to make alterations in the grade, or other alterations in the public improvements, such as paving, etc. (that is to say, alterations in the pavements laid), the company shall not be put to the expense of conforming its track, once laid, to such alterations, and shall not be mulcted in expenses, in order to meet the whims, or even the sound judgment of the city engineer, and other authorities, in respect to changes that shall be made in street conditions.

Those sections contain no stipulations whatever in regard to

the original pavement of a street; but only in respect to changes in the pavement. We will now analyze those sections, one by one.

This ordinance granted extraordinary privileges, as the court will see, by reading the same. At the same time, it did undertake to give the municipality a few safe-guards.

Now, section 7 manifestly intends, in its earlier provisions, to require that the track laid by the company should be laid on the present customary and established grades of the street. This provision was not intended as a privilege to the company to lay its tracks on those grades; but was intended to require of the company that it should be done. It was intended to protect the city from any assumption by the company of a claim or right to depart from the established grades, as they then existed, in the laying of its track on any notion which the company might have of engineering or economical requirements. The provision was an exaction of the company, and not a right conferred on it.

That the foregoing is a correct construction of this provision in the section is not only shown by the inherent matter of the provision, but is also shown by the expressed stipulation that any departure from such grade could be "upon consent of the mayor." If it had been intended that such departure would be merely the exercise of a privilege reserved to the company and not a departure from an obligation imposed on the company; then, why should the consent of the mayor be required?

Having so required of the company that it should lay its tracks on the established grade, the section then proceeds to provide that whenever it should be deemed necessary by the municipal board "to temporarily take up and remove the same (that is the railroad track), for the purpose of grading, regrading, paving, making any public or private improvement, or otherwise improving said street, or any part of the same," then it should be done at the expense of the city.

It is, therefore, perfectly obvious, that it is only necessary to

read the section with the true notion in one's mind, to see clearly what it means. That meaning was simply this: (1) The railroad company was required to lay its track on the established grade; (2) If afterwards the city should see proper to disturb that track either in regrading the street or in paving the streets, or for any other purpose of municipal improvement, the expense of removing the track, and replacing the same was to be borne by the city. This was a legitimate and logical consequence upon the first provision. But the whole question of the original pavement of the street, without referring to any change of grade in the street, is entirely outside of this stipulation, and is not squinted at in it.

Passing now to section 15, it is not necessary to analyze this section so fully. Even a casual reading of the same, with the analysis of section 7 in mind, will show that it is nothing but a repetition, more elaborately and fully stated, of the same essential idea. Section 15 has nothing whatever to do with the question of original paving, except in so far as the fact of paving may result in a necessary temporary taking up, removal or interference with the track laid on the established grade, or with the poles, turn-outs, etc. It is in that connection that the stipulation occurs, "that the city shall pay all the costs and expenses incident thereto, or in connection therewith." The phrase "incident thereto," has reference to nothing whatever, except the taking up, removal or interference with the track temporarily. The question of original construction of a pavement is not dealt with in this section.

If in the original construction of the pavement, there was any special feature of temporarily taking up of the tracks and replacing them, in the course of such paving work, the city would have to bear it, under this section, if the section be valid. But the general question independent of that special feature, of the liability of the company to be assessed for original street paving is not touched upon.

Passing to section 16, neither does this section touch on the

question of street paving. Its provision is simply this, and nothing more—that the city shall keep its streets in good order, so that the operation of the railroad shall not be retarded or impeded by the bad condition of the street.

We therefore submit that the whole construction of this ordinance, as the same is assigned in and by the demurrer, is erroneous, and the ordinance contains no such stipulation, or intendment, as the demurrer assigns to it.

It has long been settled law in this state that the whole matter of taxation (and assessment is a branch of the taxing law) exercised by municipalities, is, by delegation of the state's taxing power made by the legislature. It has also long been settled law that where there is any claim which is essentially a claim of exemption from taxation, and here it is, the legislative intent to grant such an exemption must be expressed in terms clear and unambiguous. It devolves upon one claiming such exemption clearly to show his right thereto. *Railroad Co. v. Thomas,* 65 Miss. 553; *Southern Ice Co. v. Greenville,* 69 Miss. 86; *State v. Simmons,* 70 Miss. 485.

If that be true in regard to a legislative grant, all the more must it be true in respect to one claiming what is essentially an exemption under a municipal ordinance. The principle is the same.

The second specific point relied on by the demurrer is the effect of the compromise settlement made in equity cause No. 2,537, in the year 1905. It is claimed that that settlement constituted a contract which is binding as to this case on the city.

An examination of the record in that case, however, will show (waiving for the present the question of power) that the subject matter of the suit is different, and that a compromise and settlement of that case, even if it were a contract which would be binding as to its own subject matter, is not available to the railroad company as a defense against this suit.

In suit 2,537, a bill was filed by the city against the street

railroad company for the recovery of a definite and specific sum of money, being $10,314.66, theretofore paid out by the city on account of paving which the street railroad company should have done, under the paving ordinance; such having been done on certain designated portions of Capitol street, in the bill described. The compromise and settlement that was made was a settlement of the city's demand for that sum of money, $10,314.66, paid out for the paving of those particular portions of Capitol street described in the bill.

The record in the equity cause shows that pursuant to that compromise and settlement, the bill so filed by the city was simply dismissed.

This bill was filed by the city, in order to force the street railroad company to pave a different portion of Capitol street from what was involved in the previous litigation. In the former suit no money was demanded for paving any part of the street which is involved in this suit.

In this suit no effort is made to hold the railroad company responsible for a single dollar of the money that was involved in that suit. The only connection between the two suits is an historical one; and the further fact that in each of the two suits a certain legal principle or question is brought into issue, which is the same in each suit; that question simply being the right of the city to require such paving to be done, the two suits involving really different subject matters, although the subjects matter are of the same order, and of similar nature, and although they may rest upon the same legal principles for the solution of the two suits, does not so relate the two suits legally as that the compromise or settlement of the one can be pleaded as an answer to the other.

The case is in the category which was answered by the supreme court by its decision in *Railroad Co. v. Wirt Adams,* 77 Miss. 194, bottom of page 266.

The court will observe that even if, in the said cause, No.

2,537, there had been the judgment of the court favorable to the railroad company, that judgment, because it is a different subject matter, would not have constituted *res adjudicata* in this case; much less would a mere compromise and abandonment of a specific money demand estop the city in this case as a contract about a different thing.

We rely upon the foregoing alone as constituting a complete answer, and an independent answer, to this proposition; but it is not the only answer. And we shall now invite the court's attention to certain further facts.

What is the ordinance that is relied upon as constituting the compromise which made the contract that estopped the city from prosecuting the present suit? That ordinance is exhibited with the amended bill demurred to. The substantial part is the so-called amendment or original section 15 of the ordinance of the 5th of April, 1898. That amendment consists in the fact, not that section 15 was changed in any way; but simply that an addition was made to it. That addition provided that at the end of ten years from the first day of June, 1906, the railway company should, when called upon by the city to do so, pave between its rails and tracks, etc., on all such portions of the street as shall at that time have been already paved by the city, over which said railroad ran, and on all such streets which shall not then have been paved, but should afterwards be paved.

The court will remember that the rule is that these contracts must be strictly construed in favor of the city. So construing this ordinance strictly, what is its provision?

Is there in it any recognition of the rights of the city railroad company to resist finally or to be in any way absolved from paving? On the contrary, there is a clear recognition of the liability of the railroad company to pave. The only provision is that that liability may be postponed until ten years after the making of the ordinance. In other words, it is simply an agreement for time, and not a contract by which the railroad company was exonerated from its legal obligation.

Secondly, if the ordinance be read closely, it will be seen that it constitutes, so far as valid, a stipulation on the part of the railroad company that it would pave on demand, after the stipulated time. The effect of it was an agreement, so far as it was an agreement at all, that it should not be necessary for the city any more to go to the trouble, incur the delay, etc., of making formal assessment, and having the legal procedures gone through with, which were necessary to impose legal liability upon the railroad company but that it would perform its obligation on demand.

The only point in the ordinance, therefore, which has any bearing on this case, was simply the agreement for time. What was the consideration for that agreement? What did the railway company get? What did the city pay? The answer is— nothing. Considered as an agreement, it was nothing more than a promise, without consideration, and not binding, for an extension of time to do what, in and by the very ordinance itself, it was recognized that the railroad company was bound to do.

The preamble to the ordinance recites that the railroad company was desirous of extending its lines, etc., but that was nothing more than the railroad company had undertaken to do by the original contract made in 1898. There were some preambles about enlarging its power houses, etc., but that was all for its own interest, and the obligation to do it was, in fact, carried by its original contract. There was a preamble about removing poles from the street, etc., but that was nothing more than the city had a right to force it to do at any time, in the exercise of its police power; and so on throughout.

In addition to the two foregoing answers, we submit the third, which goes to the question of power. Our position is that even if, in that ordinance, there were all the elements of a valid and binding contract, as is claimed by the demurrer herein (we mean of course, a contract which would have been valid and binding

under common-law principles), such attempted contract was null and void, beause, first, it was wholly unauthorized by the chapter on municipalities, under which the city of Jackson was conducting its business, and, secondly, because in direct and palpable violation of the constitution and laws of the state.

The court will note the fact that the validity of the Jackson paving ordinance of 1902 is not an open question. It was settled by the case of *Edwards House Co. v. City of Jackson,* 91 Miss. 429, 45 South. 14.

But no power in this statute is expressly given, or is given by necessary implication, to do the thing which the railway company claims to have been done in this instance.

Secondly, even if such contract had been undertaken to be made, and if the conditions of its making were such as that it would be valid by common-law principles, yet, still, it is void because it would be directly violative of the laws and constitution of the state. We have special reference to section 182, of the Constitution of 1890, which reads as follows:

"The power to tax corporations and their property shall never be surrendered or abridged by any contract or grant to which the state, or any political subdivision thereof may be a party," etc.

Here is an express and direct prohibition of the thing which is claimed to have been done in this case. The making of an assessment for the street paving is an exercise of the power of taxation, unquestionably. The statute itself (sec. 3411), expressly designates it. Whether the ordinance of 1905 is claimed to be a surrender, or whether the right to assess was merely postponed for ten years; it was still surrendered or abridged, one or the other. The very claim made in the demurrer is that it was done by a contract; and nobody will deny that the city of Jackson is a political subdivision of the state, within contemplation of the constitution.

That the making of an assessment for the street paving is an

exercise of the taxing power, is not open to question. It is so treated in all the books. Before the Constitution of 1890 was adopted it was so expressly declared by the judicial decisions of this court. See *Daley v. Swope,* 47 Miss. 367; *Vasser v. George,* 47 Miss. 713.

Mayes, J., delivered the opinion of the court.

This suit is begun by the city of Jackson, and its object is to compel the street railroad company to pave between and two feet on each side of the rails. The street railroad company resists this effort on the part of the city on the contention that the city has no authority to compel it to pave as above, because it has exempted the street railroad company from this require-ment for ten years, beginning from 1906, and because the city has no power to compel the railroad company to make this street improvement. A bill filed by the city, praying for a decree requiring the company to make the improvement, and also praying for a mandatory injunction requiring the company to obey the decree, was demurred to by the railroad company, and the demurrer overruled, and an appeal allowed from this decree for the purpose of settling the principles of the case. We shall not undertake to fully state all the allegations contained in the bill of complaint, but will simply refer to those matters of fact which are necessary to explain the decision. There are a few controlling facts which we deem necessary to emphasize. The city abandoned its special charter during 1892, and that year came under the provisions of chapter 93, Code 1892, which provides a general charter for all municipalities in the state operating under same, and prescribes the powers, duties, and rights of all cities operating thereunder. Chapter 93, Code of 1892, by almost a literal rescript, is now chapter 99 of the Code of 1906. When we refer to the Code, we shall cite the Code of 1892, since the questions originated while that Code was in effect.

In 1898, and under the law as it was in the Code chapter, the street railroad company obtained its charter from the city of Jackson, and, of course, only such charter powers as the city could lawfully cede could be conferred on the street railroad company by the grant. The street railroad company was bound to take its charter subject to all the limitations imposed upon the mayor and board of aldermen in the exercise of their powers. When the street railroad company procured its charter section 2925, Code 1892 (section 3316, Code 1906) provided that "the mayor and board of aldermen of every city, town, and village shall have the care, management, and control of the city, town, or village, and its property, etc., and shall have power to enact ordinances for the purposes hereinafter named," etc., and the power is also given by this section for the mayor and board of aldermen "to alter, modify and repeal" ordinances. The following sections of the Code then proceed to enumerate the powers granted to the cities, towns, etc., to be held and exercised by the mayor and board of aldermen as trustees for the cities. Section 2947 authorizes the mayor and board of aldermen "to exercise full jurisdiction in the matter of streets, sidewalks," etc., "and to repair, maintain, pave, sprinkle," etc. These powers delegated to the city, to be exercised through the mayor and board of aldermen, were given for the benefit of the city, and are to be exercised in the discretion of the mayor and board of aldermen in power at the time their judgment dictates the necessity. These provisions of the municipal charter write themselves into all grants made by it to any corporation or association beyond the power of any mayor and board of aldermen to obliterate. The statute gives each mayor and board of aldermen the power to exercise full jurisdiction in the matter of streets, etc. Full jurisdiction comprehends the doing of everything necessary to the development of the convenience and safety of the streets, and it cannot be doubted in this modern day that paving streets accomplishes both. Each mayor and

board of aldermen cannot exercise full jurisdiction if predeces- sors may tie their hands in the matter of requiring to be done any matter which is comprehended in the exercise of full juris- diction; that is to say, each mayor and board of aldermen has a right, in their discretion, to say when paving is necessary. It is a discretion which vests in them at the time they choose to exercise it; that is to say, the right vests in the municipality to exercise it through the mayor and board of aldermen. It is a right in the municipality, belonging to the inhabitants, and exercised through the constituted authorities. No franchise can be granted giving powers in contravention of the charter rights of a city. Section 2925, Code 1892 (section 3316, Code 1906), itself provides that the mayor and board of aldermen can pass no ordinance repugnant to the laws of the state, and if one mayor and board of aldermen can take away a part of the right to exercise full jurisdiction as to the streets, it would, to that extent, abridge the right which vests in the city to have its mayor and board of aldermen exercise full jurisdiction at all times.

In 1902, acting under sections 3011, 3012, Code 1892 (sec- tions 3411, 3412, Code 1906), the mayor and board of alder- men declared that the paving of the streets was necessary and proceeded to enact ordinances requiring the street to be paved, assessing the abutting property owners for part of the costs of same. The street to be paved was a street on which the street railroad company was at that time and is now operating. After these ordinances were adopted, the city proceeded to pave the street and to assess the abutting property owners. The validity of these ordinances, which are the same as involved in the pres- ent case, was drawn into question in the case of *Edwards House Company v. City of Jackson*, 91 Miss. 429, 45 South. 14, and the ordinances sustained. The paving now sought to be re- quired is the paving of different portions of the same street and involves the same ordinances. There is no complaint on the

part of the street railroad company that they are being sub-jected to any unjust or unreasonable apportionment of the cost. The contention is that the city has contracted away its power to require the street railroad company to pave. We do not think that the contention of the railroad company that the city ex-empted it from the requirement as to paving in its original charter of 1898 is sustained, when the charter is inspected. As a matter of fact, we do not deem it necessary to discuss this feature of the matter, however, since it is our view that, if the city had undertaken to do this it would not have had the power under the law as it existed at that time and now. The only sections of the charter under which this contention could arise are sections 7, 15, and 16, and when these sections are exam-ined it would require the reversal of all rules of statutory con-struction applying to exemption claims to so hold. Exemptions of any character can only be claimed when the legislative intent is expressed in the clearest and most unambiguous terms. Ap-plying this rule to this charter, and the contention necessarily falls before it. *Railroad Co. v. Thomas,* 65 Miss. 553, 5 South. 108; *Ice Co. v. Greenville,* 69 Miss. 86, 10 South. 574; *State v. Simmons,* 70 Miss. 485, 12 South. 477. We do not deem it necessary to enter into any analysis of sections 7, 15, and 16 of the charter of the street railroad company, since it is our view that, even if the city had undertaken to grant this exemption, it could not have done so. If we were to hold otherwise, one set of city officers could defeat the powers delegated to the city and preclude a succeeding set of officers, however necessitous might be the cause, from ever exercising the right to require any par-ticular street paved. It is essential to a full jurisdiction of streets that the mayor and board of aldermen, whose discretion is called into play, shall have the power to do those things which are necessary to perfect a street for public utility. The powers of a municipality are given to it, not to the particular men who hold the office. They are for the benefit of the inhabitants of the municipality.

It would seem, from what we have said in the foregoing part of this opinion, that it is unnecessary to discuss whether or not the mayor and board of aldermen did enter into a contract in 1906 relieving the street railroad company from further duty to pave. It is manifest that the purpose of the former suit was to collect from the street railway company something over $10,000 claimed to be due the city for paving that had already been done, and in so far as this claim is concerned it was settled in the compromise agreement; but that is as far as the mayor and board of aldermen had any authority to go. The parts of the streets involved in this litigation were not involved in that, and this suit is about a different subject matter. As before stated, the city had no authority, through its mayor and board of aldermen, under the very terms of the charter, to relieve the street railroad company of its duty to do this paving, and any contract looking to this was *ultra vires*. There seems to be little dissent from the view that an *ultra vires* contract made with the agents of the city cannot operate as an estoppel on the city. The mayor and board of aldermen are the mere agents of the city, having power to bind the city only within the scope of authority delegated to them. If a city could be estopped on an *ultra vires* contract by its mere agents, there would be little force in charter restrictions on the power of the agents of the city to bind it, since they could be easily destroyed in this way. All parties dealing with the city must take note of its charter and the power of its officers. It is a matter of law, and the citizens whom they represent cannot be prejudiced by their unauthorized and *ultra vires* acts. The powers are the city's powers, and not those of the officers who happen to represent the city. *Newbery v. Fox,* 37 Minn. 141, 33 N. W. 333, 5 Am. St. Rep. 830; *Rens v. Grand Rapids,* 73 Mich. 237, 41 N. W. 263; *Pettis v. Johnson et al.,* 56 Ind. 139; *Bogart v. Lamoth Township,* 79 Mich. 294, 44 N. W. 612; Cooley, Const. Lim. (6th ed.) 261; Abbott on Munic. Cor. vol. 1, § 259. In the absence of any special provision in the charter of the street rail-

road company requiring it to share its burden of paving the street which it occupies with its road, it is well settled by the weight of authority that the street railroad company, as well as any other property owner on the street, may be required to pay its *pro rata* part of the cost. It may be that the character of property belonging to the street railroad is somewhat different from that of an abutting owner, but that a street railroad company has property rights in a street which are subject to local assessment is supported by an almost unanimity of authority. They are abutting property owners in the sense of local assessment laws. They make a higher and a different use of the street from that of any other occupant of same. Their franchise is valuable, and often exclusive. Gray's Limitation on Taxing Power, §§ 1925–1933.

But this case must be reversed and the bill dismissed, for the reason that at present the city has no right to institute this suit, since there is now no debt owing the city, because no paving has been done by it. We do not think there can be any good reason for drawing any distinction between the rights of a street railroad company and those of any other property owner in the street, when it comes to the enforcement of this local assessment. The street railroad company is entitled to its right to lay the pavement for itself, and does not become liable for the cost of pavement until after the city has notified it to lay it and it has failed and the city lays the pavement. In short, the city has not done what is required of it before it brings this suit to recover the amount which will be owing it for paving this street; and until it has done this, and paves this street, it can have no recourse against the abutting property owner. The city only has the power to require the property owner to do the paving in the first instance, so as to enable the property owner to do it himself if he so desires. If he fail on notification, then the city may do the work itself and assess the cost against him; but, until it has done so, it has no standing in court.                    *Reversed and bill dismissed.*