# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01293-SCT

*BILOXI FIREFIGHTERS ASSOCIATION*

*v.*

*CITY OF BILOXI, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/17/2000 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RALPH PRESTON KING, II |
| | WENDY C. HOLLINGSWORTH |
| ATTORNEY FOR APPELLEE: | TERE R. STEEL |
| NATURE OF THE CASE: | CIVIL-OTHER |
| DISPOSITION: | AFFIRMED - 03/14/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/4/2002 |

## BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.

### CARLSON, JUSTICE, FOR THE COURT:

¶1. Feeling aggrieved by the circuit court's grant of summary judgment in favor of the City of Biloxi (City), the Biloxi Firefighters Association, Local 1583, IAFF (Association) has appealed to this Court on the key issue of whether the City should be bound by a prior city council's resolution recognizing the Association as the bargaining agent for certain employees of the fire department. Finding that the City's motion for summary judgment was properly granted on this and other issues raised by the Association, this Court affirms the action of the circuit court.

## STATEMENT OF THE CASE

¶2. On March 20, 1996, the Association filed a complaint for declaratory judgment against the City in the Circuit Court of Harrison County, Second Judicial District, pursuant to Miss. R. Civ. P. 57. The complaint sought, inter alia, judicial enforcement of a prior city council's resolution which directed the "mayor or his designee" to enter into good faith negotiations with the Association so as to establish a "written memorandum of understanding concerning wages, hours of work and conditions of employment." Specifically, the complaint requested the circuit court to order the City to timely commence negotiations with the Association. In its answer and amended answer to the complaint, the City basically denied that the Association was entitled to any relief. The Association filed a motion for summary judgment, and the City

filed a cross-motion for summary judgment. The Association filed an emergency motion to dismiss all of defendant's pleadings. On March 5, 1999, both the motion and cross-motion were heard in open court. On April 13, 1999, the trial court issued and filed its findings of fact and conclusions of law, holding that there was no genuine issue of material fact and concluding that the City was entitled to a judgment as a matter of law. This ruling by the trial court had the practical effect of granting the City's cross-motion for summary judgment and denying the Association's motion for summary judgment. The trial court likewise denied the Association's emergency motion to dismiss all of defendant's pleadings. Final judgment was entered for the City on July 19, 2000. The Association timely filed its notice of appeal to this Court.

## FACTS

¶3. On December 21, 1992, the Biloxi City Council adopted Resolution 429-92, which was signed and approved by then-Mayor Pete Halat on December 23, 1992. The resolution provided that the Association would be the sole organization representing "certain employees of the Fire Department of the City...," and provided, in pertinent part:

> Section 3: The mayor or his designee shall enter into good faith negotiations for the purpose of establishing a written memorandum of understanding concerning wages, hours of work, and conditions of employment.

Section 1 stated that the Association represented all firefighters "who are not ranked higher than Captain." One interesting note is that current Biloxi Mayor A.J. Holloway cast the sole dissenting vote as council member when the resolution was passed in 1992.

¶4. Including the officials who were in office at the time of passage of Resolution No. 429-92, there have been four sets of elected municipal officials from that date forward. None of the current city council members occupied a seat on the council when the resolution was enacted. Mayor Halat's term ended in July 1993, and there is no evidence in the record that the Association took any action to initiate negotiations with Mayor Halat or his designee before a new mayor and city council had taken office. There is also no evidence of the Association initiating contact with the City before November of 1995, when former Mayor Halat, acting as the Association's legal counsel, made contact with the City. This suit was filed almost three years after the expiration of the terms of the officials who enacted Resolution 429-92.

¶5. Of further interest is the fact that Resolution 390-96 was approved by the city council on August 20, 1996. This resolution "recognized" the Association and further stated that:

> .....the mayor is to meet with union members and non-union employees, to determine the reasons for employee dissatisfaction and poor employee morale, and make appropriate recommendations to the City council for further action.

However, Mayor Holloway vetoed Resolution 390-96 on September 6, 1996. Thereafter, on September 10, 1996, the city council attempted to override Mayor Holloway's veto, but such efforts failed to achieve the required two-thirds vote.

## STANDARD OF REVIEW

¶6. The inquiry in this case is a question of law. Specifically, it is for this Court to decide whether the City was entitled to summary judgment as a matter of law. "[The court] may only determine whether there are

issues to be tried ..." ***Brown v. Credit Ctr., Inc.***, 444 So.2d 358, 362 (Miss. 1983) (quoting Miss. R. Civ. P. 56 adv. comm. note). A de novo standard of review is used in analyzing a trial court's grant of a summary judgment. ***Baptiste v. Jitney Jungle Stores of Am., Inc.,*** 651 So.2d 1063, 1065 (Miss. 1995) (citing ***Short v. Columbus Rubber & Gasket Co.,*** 535 So.2d 61, 63 (Miss. 1988)). A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [Miss. R. Civ. P. 56(c)](). To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the rule. ***Baptiste***, 651 So.2d at 1065 (citing ***Lyle v. Mladinich***, 584 So.2d 397, 398 (Miss. 1991)).

## ANALYSIS

### I. WHETHER RESOLUTION NO. 429-92 IS BINDING UPON SUBSEQUENT ADMINISTRATIONS OF THE CITY OF BILOXI.

¶7. Miss. Code Ann. § 21-17-5(1) (2001) provides in pertinent part:

> The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances....

Additionally, the statute grants a municipality the power to adopt any orders, resolutions, or ordinances not inconsistent with the state constitution or code, or any other statute or law of the state. The statute also affords the appropriate municipal authorities the power to "alter, modify, and repeal" such orders, resolutions, or ordinances.

¶8. Miss. Code Ann. § 21-25-3 (1) (2001) provides that governing authorities of a municipality have the power to "provide for the prevention and extinguishment of fires," and "to provide for and maintain a fire department and system, and to regulate the same."

¶9. In ***Webb v. City of Meridian***, 195 So.2d 832 (Miss. 1967), this Court stated:

> [i]f a power is conferred and the law is silent as to the mode of exercising it, municipal authorities are clothed with a reasonable discretion to determine the manner in which it shall be carried out.

195 So.2d at 835. Additionally, in ***Scott v. Lowe,*** 223 Miss. 312, 318, 78 So.2d 452, 454 (1955), this Court stated that the city's dealings with employees are discretionary. Specifically, the Court in ***Scott*** stated:

> The city authorities in transferring an employee of the fire department from one post to another act in an administrative and executive capacity, and necessarily are vested with a wide discretion in the discharge of their duties are officers of the city...the governing bodies of municipalities have the power to organize, operate and maintain fire departments and 'to regulate the same.'

78 So.2d at 454.

¶10. In ***Edwards Hotel & City R. Co. v. City of Jackson***, 96 Miss. 547, 51 So. 802 (1910), the Court directly addressed the issue of a mayor and board of aldermen binding their successors:

> Each mayor and board of aldermen cannot exercise full jurisdiction if predecessors may tie their hands in the matter of requiring to be done any matter which is comprehended in the exercise of full jurisdiction....

51 So. at 805. *Edwards* also issued a caveat concerning one set of municipal officers undermining the powers of a subsequent set of municipal officers:

> If we were to hold otherwise, one set of city officers could defeat the powers delegated to the city and preclude a succeeding set of officers, however necessitous might be the cause (from using the powers granted it).

*Id.* at 805. As if to speak directly to the instant case, *Edwards* continued:

> The mayor and board of aldermen are the mere agents of the city, having power to bind the city only within the scope of authority delegated to them. If a city could be estopped on an ultra vires contract by its mere agents, there would be little force in charter restrictions on the power of the agents of the city to bind it, since they could be easily destroyed in this way.

*Id.* at 805.

¶11. In *Tullos v. Town of Magee*, 181 Miss. 288, 179 So. 557 (1938), one administration of the town entered into a lifetime contract with a man to compensate him for maintaining the town's water supply, which originated at a spring on his land. When a subsequent town administration sought to lower his compensation, he brought suit. This Court sided with the town of Magee, reasoning:

> [I]t is beyond the power of municipal officers to bind their successors in office in the exercise of their discretionary authority...

179 So. at 558. *Tullos* concisely stated that ,under *Edwards,* if a contract entered into by municipal officials is ultra vires, it is unenforceable. *Id.* at 558-59.

¶12. In *American Oil Co. v. Marion County*, 187 Miss. 148, 192 So. 296 (1939), this Court expressly forbid the Marion County Board of Supervisors from leasing county property used as part of the land surrounding the county courthouse for a term of years, stating:

> A board... may not, by contract, preclude itself or its successors in office from the right and the duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power.

192 So. at 299.

¶13. Instructive, though not binding on this Court, is the Massachusetts case of *Labor Relations Comm'n v. Board of Selectmen*, 373 N.E.2d 1165 (Mass. 1978). With similar facts, the Massachusetts Supreme Judicial Court held that a decision to support a collective bargaining agreement was purely a discretionary matter. That court also succinctly stated:

> [E]lected successor public officials cannot be required to indorse publicly the terms of a collective bargaining agreement negotiated by their predecessors.

*Id.* at 1170.

¶14. In analyzing the statutes and cases, it is abundantly clear that there is no genuine issue of material fact and that the City was entitled to judgment as a matter of law. The action of the city council in passing

Resolution 429-92 was dubious, given Section 8 of the Resolution, which reads: "The contract...will not expire in a City of Biloxi Municipal election year." The law discussed *supra* renders the passage of Resolution No. 429-92 to be an ultra vires act (one which is beyond the powers conferred upon the municipality by law) and not binding on its face. The 1992 city council could not contract away a subsequent governing body's "control of municipal affairs, property, and finances." Miss. Code Ann. § 21-17-5(1). Likewise, the city council could not contract away a successor administration's right "to maintain a fire department...and to regulate the same...." Miss. Code Ann. § 21-25-3(1).

¶15. In sum, while the 1992 city council may have had authority to adopt Resolution No. 429-92 effectively recognizing the Association as the bargaining agent for certain employees of the City fire department and directing Mayor Halat to enter into good faith negotiations with the Association, this act was clearly discretionary and thus not binding on successor city administrations. To hold otherwise would permit city administrations, through their actions, to "tie the hands" of successor administrations and totally destroy their ability to effectively conduct city business. Accordingly, we hold here that the City's 1992 adoption of Resolution No. 429-92 was not binding on subsequent Biloxi city councils which, in the exercise of discretion, could determine whether to adhere to the provisions of this resolution. The circuit court, therefore, did not err in granting summary judgment in favor of the City on this issue.

## II. WHETHER RESOLUTION NO. 429-92 IS A RESOLUTION OR AN ORDINANCE.

## III. WHETHER RESOLUTION NO. 429-92 IS TOO INDEFINITE TO BE ENFORCED AGAINST THE CITY OF BILOXI.

¶16. Stated succinctly, was Resolution No. 429-92 indeed a resolution, temporary in nature, or was it an ordinance, which could be deemed permanent in nature, thereby requiring the affirmative action of a subsequent city council to repeal the "ordinance"?

¶17. This issue has previously been addressed by this Court. In *Evans v. City of Jackson*, 202 Miss. 9, 30 So.2d 315 (1947), this Court stated:

> An ordinance is enacted to regulate continuing conditions, and constitutes a permanent rule of government.... An ordinance generally continues to operate until formally repealed. A resolution 'is merely declaratory of the will of the corporation in a given matter, and in the nature of a ministerial act.' (Citing 43 C.J. 519, Sec. 798 Municipal Corporations.)

30 So.2d at 317.

¶18. In *New Orleans & N.E.R.Co. v. City of Picayune*, 164 Miss. 737, 145 So. 101 (1933), we find this language:

> [A]n ordinance must have a title which shall clearly express the one subject with which the ordinance deals, must conform to a statutory style, and shall be read and considered by sections....But of a resolution none of these features is required. A resolution is not required to contain the formalities of an ordinance, for generally speaking, a resolution is merely a declaration of the will or mind of the municipal council, and no set form or arrangement of words is essential to that declaration so long as it may be fairly found from the language used that there has been an actual expression of the will or mind of the council.

145 So. at 102 (citations omitted).

¶19. Most noticeable in Resolution No. 429-92 is that it is referred to as a resolution in several different places. "NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF BILOXI, MISSISSIPPI......The foregoing Resolution having first been reduced to writing....The President then declared the Resolution adopted this the 21st day of December, 1992." (emphasis added). Nowhere in the Resolution does the word "ordinance" appear. Admittedly, *Evans* suggests that whether the instrument is called an order, ordinance, or resolution is secondary to what the instrument actually does, e.g., "a word may be ascertained by reference to the meaning of the words associated with it...." *Evans*, 202 Miss. at 16, 30 So.2d at 317. However, from a reading of the "resolution," and because the Biloxi City Council never had the right to bind successor councils, Resolution 429-92 is necessarily exactly what it calls itself: a resolution. Being such, no affirmative action is required to revoke it, as the temporary nature of a resolution would become self-revoked once a subsequent city council assumed office.

¶20. The Association points out that should this Court decide the resolution to be discretionary, and therefore, not binding on subsequent administrations, the subsequent administrations have taken no affirmative steps to rescind the resolution. Because of the discussion above, we believe they did not have to. The very nature of a resolution makes rescinding or negating the same unnecessary. Again, a resolution is effectively rescinded when the city council passing it leaves office. The circuit court's finding that Resolution No. 429-92 was a resolution and not an ordinance was appropriate.

¶21. Finally, based on the record, the circuit court was also correct, as a matter of law, in holding that Resolution No. 429-92 was too indefinite to be enforced via injunctive relief inasmuch as the resolution did little more than to direct the mayor to "negotiate in good faith" with the Association, which in essence was nothing more than "an agreement to agree" and therefore unenforceable as a matter of law due to indefiniteness. *See, e.g., Etheridge v. Ramzy*, 276 So.2d 451,454 (Miss. 1973); *McGee & Gelman v. Park View Equities, Inc*. 591 N.Y.S.2d 656, 657 (N.Y. App. Div. 1992).

## CONCLUSION

¶22. The circuit court was eminently correct in granting the City's motion for summary judgment. Pursuant to Miss.R.Civ. P. 56(c), and the applicable case law, there is no genuine issue as to any material fact and the City is entitled to a judgment as a matter of law. One city council cannot legally adopt a resolution binding a successor administration on discretionary matters. A collective bargaining agreement is policy-oriented, reflecting the will of a certain administration. To hold that such action as a matter of law binds a subsequent administration would violate well-settled Mississippi case law.

¶23. Additionally, Resolution No. 429-92 was simply a "resolution" and not an "ordinance" and therefore, no subsequent city administration was bound by such resolution. Finally, even if the circuit court deemed it appropriate to consider attempted enforcement of the resolution, it was too indefinite in its language to be enforced by way of injunctive relief.

¶24. The circuit court's grant of summary judgment in favor of the City is affirmed in all respects.

¶25. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND GRAVES, JJ., CONCUR. DIAZ**

**AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶26. Nearly 10 years ago, the Biloxi Firefighters Association was established as the union for certain Biloxi firefighters and recognized by the then city council. However, the current mayor refuses to recognize and negotiate with the Association. Negotiations on behalf of these firefighters have been stifled for over 8 years because of the mayor's abjuration. Whether subsequent city council members through their inaction have acquiesced in the recognition of the union pursuant to the "resolution" at issue is a question of fact for a jury to determine; and therefore, summary judgment was improper. Additionally, the 1992 "resolution" is in substance the same as if it were an ordinance and therefore should be acknowledged and followed until and unless said directive is amended, repealed or rescinded by the city council. Finding that there are genuine issues of material fact, I would allow this case to proceed to trial on the merits. For these reasons, I respectfully dissent.

¶27. The majority focuses on use of the terms resolution and resolved to find that the 1992 "resolution" does not bind subsequent city councils. This is a weak rationale. The main difference between an ordinance and a resolution is one of form, not substance. As noted in *Evans*, "[a] resolution is not required to contain the formalities of an ordinance." *Evans v. City of Jackson*, 202 Miss. 9, 17, 30 So.2d 315, 318 (1947). Even the majority admits that *Evans* holds that the name or label is secondary to what the instrument actually does. *Id.*

¶28. The city council in its resolution recognized the Association as the bargaining agent of certain firefighters and directed that "the mayor or his designee shall enter into good faith negotiations for the purpose of establishing a written memorandum of understanding concerning wages, hours or work and conditions of employment." In January 1993, after the resolution was passed, the Association as the bargaining agent of the fire department, submitted an 80-page memorandum containing 62 articles to the City and persisted in facilitating negotiations with the City. On February 26, 1996, the City, acting under said resolution finally responded to the Association by rejecting the majority of the memorandum. However, four articles were accepted. Since the city government in 1992 and now the administration in 1996 recognized proprietary functions in the resolution, their acts and deeds appear to have reaffirmed the resolution. The resolution is therefore binding on the current governing body. *See* 56 Am. Jur. 2d *Municipal Corporations, Counties and Other Political Subdivisions* § 135, at 205 (2000).

¶29. What is of interest is that the present city council of Biloxi, after this lawsuit was filed, recognized the Association by adopting Resolution 390-96. That resolution was vetoed by the present mayor on September 6, 1996. It is of further interest that the resolution to override the Mayor's veto was defeated on September 10, 1996. Four council members, Compton, Bistle, Harenski and Wall, voted to override the veto, whereas council members Ferrill, Dickey and Bellande voted not to override it. The president of the city council then declared that two-thirds of the members had failed to override the mayor's veto. Although the mayor's veto was not overridden, the majority of the council members reaffirmed their position of recognizing the firefighters union through their actions. Nothing thus far has overridden the ordinance of 1992 and since it has not been vetoed, repealed, amended or rescinded, it appears that the present city council still recognizes the union.

¶30. My concern is the fact that the City may find that it is easier to deal with the Association than it is to

deal with individuals separately. In this case, the subject resolution was passed with all of the formalities of an ordinance and therefore is a legislative act. If the City wants to repeal or rescind it, then it may do so. One governing body may bind a subsequent governing body when it exercises proprietary powers. This was a proprietary power that it exercised, but more importantly, the governing body acknowledged the union in February 1996 by entering into negotiations. Even though it primarily rejected the majority of the memorandum, the City did adhere to four articles.

¶31. Summary judgment was not proper on this record. Finding that the "resolution" at issue acts substantively as an ordinance and that there are issues of fact to be determined, I would reverse the circuit court's grant of summary judgment and remand this case for trial.

¶32. Accordingly, I dissent.