# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01195-SCT

*NORTHEAST MENTAL HEALTH - MENTAL
RETARDATION COMMISSION*

*v.*

*V. M. CLEVELAND*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2014 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| TRIAL COURT ATTORNEYS: | WILLIAM M. BEASLEY, SR. |
| | WILLIAM MICHAEL BEASLEY, JR. |
| | JASON D. HERRING |
| | GARY L. CARNATHAN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | FRED L. BANKS, JR. |
| | WILLIAM MICHAEL BEASLEY, JR. |
| ATTORNEYS FOR APPELLEE: | JASON D. HERRING |
| | MICHAEL S. CHAPMAN |
| | GARY L. CARNATHAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 03/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.   The Northeast Mental Health-Mental Retardation Commission challenges the validity

of a ninety-nine-year fixed-lease agreement with a private contractor named V.M. Cleveland.

The Commission contracted to pay Cleveland $18,000 per month over a ninety-nine-year

period to build and to lease a facility on land owned by the Commission. Payments continued

uninterrupted for ten years, until the Commission became concerned about the agreement's

legality. The Commission stopped making payments and sought to rescind the agreement. The chancellor found that the agreement was enforceable and ordered the Commission to pay Cleveland $612,000 in back rent. The Commission appeals, arguing that the agreement's ninety-nine-year duration renders the agreement voidable at the Commission's discretion as a matter of law due to the rule against binding successors. The Commission also argues that the specific terms of the agreement are unreasonable, illegal, or both, and thus void *ab initio* as a matter of law. Because this agreement violates the common-law rule against binding successors, we reverse the chancellor's judgment and render judgment in the Commission's favor.

### FACTS AND PROCEDURAL HISTORY

¶2.     The Northeast Mental Health-Mental Retardation Commission ("the Commission") is a regional health commission established under Section 41-19-33 of the Mississippi Code and a political subdivision of the State of Mississippi. The Commission is governed by a seven-member board of commissioners, each of whom serves a four-year term.[1] Miss. Code Ann. § 41-19-35 (Rev. 2013).

¶3.     In June 2000 the Commission and V.M. Cleveland entered into a Contract and Lease Agreement ("the Agreement") to build a facility to house and operate the Commission's chemical-dependency facilities in Lee County, Mississippi. Cleveland agreed to construct the

---

[1] The commissioners represent Benton, Chickasaw, Itawamba, Lee, Monroe, Pontotoc and Union Counties. Each is nominated by his or her respective county's board of supervisors. *See* Miss. Code Ann. §§ 41-19-31, -33 (Rev. 2013).

facility at his own expense on land owned by the Commission.[2] The Commission leased its state-owned land to Cleveland and committed to pay Cleveland $18,000 per month for ninety-nine years and to perform certain maintenance. Cleveland was not obligated to pay the Commission for the use of the land. The Agreement provided that, should the Commission have insufficient state and federal funds to make payments at any time during the ninety-nine-year period, the Commission was to quitclaim its land and the facility to Cleveland. After Cleveland completed the facility, the Commission began paying rent.

¶4. Four years later, the Commission hired Robert Smith as the new director. After reviewing the Agreement, Smith became concerned that the ninety-nine-year term and forfeiture clause were illegal. Based on Smith's advice, in September 2011, the Commission agreed to stop making payments and voted to void the Agreement. Up to that date, the Commission had expended $2,160,000 in lease payments to Cleveland.

¶5. The Commission sought a declaratory judgment in the Lee County Chancery Court, claiming that the Agreement was void on the basis that a board governing a political subdivision may not enter into agreements that bind successor boards without express statutory authority. Cleveland answered the complaint in November 2011, denying the

---

[2] At trial, counsel for the Commission stated, "If it please the Court at this time, I would like to mark for identification what Mr. Herring [Cleveland's counsel] and I have *stipulated and agreed reflects the actual cost that Mr. Cleveland incurred in constructing the facility*." (Emphasis added.) Cleveland's counsel objected, but only to admitting the amount based on relevance. The chancellor made it clear he intended to rule on the relevance of this exhibit in his opinion, but it was not addressed there. The exhibit was marked for identification as Exhibit 3, and it reflects the amount of construction cost as $807,672. The construction cost also was set out in the Commission's brief and was referenced during oral argument without objection.

Agreement's invalidity and asserting counterclaims for declaratory relief affirming the lease's terms and awarding specific performance and breach-of-contract damages.

¶6.    In June 2012, Cleveland moved for summary judgment. The Commission filed a competing motion for summary judgment. In August 2012, the chancellor granted partial summary judgment in Cleveland's favor as to the Agreement's enforceability. But the chancellor found genuine issues of material fact remained as to the necessity for the Commission to rescind the lease or whether such action directly or indirectly promoted its statutory purposes. In July 2014, a trial was conducted on the remaining issues. In August 2014, the chancellor found that the Agreement was fully enforceable and awarded $612,000 in back rent to Cleveland.

¶7.    The Commission appeals and raises the following issues: (1) whether the Agreement was voidable at the Commission's discretion as a matter of law based upon the rule against binding successors, and (2) whether the Agreement was void *ab initio* as a matter of law based on its unreasonable duration, fixed rental terms, and an illegal interest rate. Finding that the chancellor erred in not holding that the Agreement was voidable at the Commission's discretion due to the rule against binding successors, we reverse this judgment and render judgment in the Commission's favor. Since the first issue is dispositive of this case, we decline to address the second issue.

**ANALYSIS**

¶8.    The inquiry here is a question of law. Because the issue here concerns a question of statutory interpretation and contract construction, it is governed by a *de novo* standard of

4

review. ***Epperson v. SOUTHBank***, 93 So. 3d 10, 16 (Miss. 2012); ***Capital One Servs. v. Page***, 942 So. 2d 760, 762 (Miss. 2006).

> **I.     Whether the Agreement was voidable at the Commission's discretion as a matter of law based upon the rule against binding successors.**

¶9.     Under the common law in Mississippi, governing bodies, whether they be elected or appointed, may not bind their successors in office by contract, unless expressly authorized by law, because to do so would take away the discretionary rights and powers conferred by law upon successor governing bodies. *See, e.g.*, ***Biloxi Firefighters Ass'n v. City of Biloxi***, 810 So. 2d 589 (Miss. 2002); ***Smith v. Mitchell***, 190 Miss. 819, 1 So. 2d 765 (1941); ***American Oil Co. v. Marion County***, 187 Miss. 148, 192 So. 296 (1939); ***Tullos v. Town of Magee***, 181 Miss. 288, 179 So. 557 (1938); ***Edwards Hotel & City R. Co. v. City of Jackson***, 96 Miss. 547, 51 So. 802 (1910). The law provides that these types of contracts are voidable at the discretion of the successor governing body. ***Id.***

> **A.     *A political board or commission cannot prevent a successor administration from exercising an express statutory power by contract.***

¶10.     Central to our decision here is ***American Oil***, 192 So. 296. The Commission argues that, according to ***American Oil***, a contract that binds successors is voidable at the option of the successor board, and that this is especially true with lease agreements that prevent public bodies from selling their property. Cleveland responds that this Court voided the lease in ***American Oil*** solely because the statute at issue in ***American Oil*** did not grant the board the power to lease property. Since Section 41-19-33(1)(a) of the Mississippi Code grants the

5

Commission the authority to lease, Cleveland argues that *American Oil* does not apply here. Cleveland correctly notes that the *American Oil* Court voided the lease because the board lacked statutory authority to lease county property in that case. But that was not the only reason the Court voided the lease contract.

¶11.     In *American Oil*, the board of supervisors of Marion County executed a lease for county property for a term of twenty-five years. *Id.* at 297. The successor board filed a bill to cancel the lease executed by its predecessor board, and the trial court cancelled the lease. *Id.* The board of supervisors in *American Oil* had statutory authority to sell and convey county property. *Id.* But this Court found that the statutory authority "did not embrace the power to lease [county property] for a term of years." *Id.* at 298. The Court declared the lease null and void, reasoning that "if a predecessor board could lease county land, it would *prevent its successors from exercising the power to sell and convey*, the very thing which the Legislature has granted—the power to sell lands of the county which have ceased to be used or useful for public purposes.*" Id.* at 299-300 (emphasis added).

¶12.     The Court also held the lease contract was voidable as a matter of law because its excessive duration prevented the board from exercising its full authority to sell and convey property, even if the board had the power to lease. *American Oil*, 192 So. 2d at 299. That is why this Court stated "[a] board of supervisors may not, by contract, preclude itself or its successors in office from the right and the duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power." *Id.* The Court voided the lease because the board lacked statutory authority to lease

6

*and* it was for an impermissible duration that bound successor boards. Cases before and after *American Oil* support this reading of the case. *See infra* ¶¶ 14-20 (discussing *Biloxi Firefighters*, 810 So. 2d at 590-93, and *Edwards Hotel*, 51 So. at 803-04).

¶13. The Agreement between the Commission and Cleveland prevents future commissions from selling and conveying the subject property, exactly like the lease in *American Oil*. The Agreement requires the Commission to pay Cleveland $18,000 a month in rent for ninety-nine years and to lease the facility on state-owned property without the ability for successor commissions to renegotiate. It attempts to bind successor commissioners, who serve only four-year terms, without any statutory authority. By entering into this Agreement, the Commission's statutory authority "[t]o acquire, own and dispose of real and personal property" under Section 41-19-33(1)(m) of the Mississippi Code clearly was impeded. We agree that the Agreement is voidable at the Commission's discretion as a matter of law.

> **B.      The Agreement violates the rule against binding successors and is voidable as a matter of law at the Commission's discretion.**

¶14. This Court repeatedly has applied the rule against binding successors to void all types of agreements, even when that board or municipality had statutory authority to lease or contract, but not statutory authority to bind successors. One such case is *Biloxi Firefighters Association*, 810 So. 2d 589. The city adopted a resolution that designated a firefighters' association as the collective bargaining agent of the city's firefighters. *Id.* at 590. The resolution required that the mayor "enter into good faith negotiations" with the association. *Id.* After a successor board took office, the new mayor vetoed the resolution. *Id.* The

7

association sought a declaratory judgment to require the mayor to negotiate with the association as the resolution mandated. *Id.*

¶15. This Court considered whether the resolution in *Biloxi Firefighters* was binding upon subsequent administrations. *Id.* at 591. This Court did not strike down the resolution solely because the board of aldermen lacked the statutory authority to engage in collective bargaining. In fact, the Court said that the board possessed that power. The board had the power to adopt, modify, or repeal resolutions and ordinances, to "'provide for the prevention and extinguishment of fires,'" and "'to provide for and maintain a fire department . . . .'" *Id.*

¶16. This Court in *Biloxi Firefighters* noted the discretion municipal authorities have to determine the manner in which they exercise their powers. *Id.* at 592 (quoting *Webb v. City of Meridian*, 195 So. 2d 832, 835 (Miss. 1967)). A city's dealings with employees are discretionary. *Id.* (citing *Scott v. Lowe*, 223 Miss. 312, 318, 78 So. 2d 452, 454 (1955)). Relying on *American Oil*, this Court found that passing the resolution was an *ultra vires* act "(one which is beyond the powers conferred upon the municipality by law) and not binding on its face." *Id.* The "city council could not contract away a subsequent governing body's 'control of municipal affairs, property, and finances.'" *Id.* Nor could the city contract away a successor administration's right to maintain and regulate the fire department. *Id.*

> [T]his act was clearly discretionary and thus not binding on successor city administrations. To hold otherwise would permit city administrations, through their actions, to "tie the hands" of successor administrations and totally destroy their ability to effectively conduct city business. Accordingly, we hold here that the . . . adoption of [the resolution] was not binding on subsequent Biloxi city councils which, in the exercise of discretion, could determine whether to adhere to the provisions of this resolution.

8

*Id.* at 593.

¶17. This Court continued, "[o]ne city council cannot legally adopt a resolution binding a successor administration on discretionary matters . . . . To hold that such action as a matter of law binds a subsequent administration would violate well-settled Mississippi case law." *Id.* at 595.

¶18. This well-settled caselaw includes *Edwards Hotel & City Railroad Co.*, 51 So. at 802. Like the resolution in *Biloxi Firefighters*, this Court in *Edwards Hotel* applied the rule against binding successors not because the administration lacked statutory authority to enact ordinances concerning paving, but because the ordinance lasted for ten years and bound successor boards. In *Edwards Hotel*, the mayor and board of aldermen had the statutory authority to exercise, in their discretion, full jurisdiction to repair, maintain, and pave streets and sidewalks. *Id.* at 804. They also had statutory authority to enact, modify, and repeal ordinances. *Id.*

¶19. The city in *Edwards Hotel* passed an ordinance that granted the street railway company an exemption from a paving requirement for ten years. *Id.* at 803. The city later rescinded the exemption and sought to compel the company to pave tracks on certain streets. *Id.* at 804. The company refused and claimed the exemption under the ordinance. *Id.* This Court stated:

> Each mayor and board of aldermen cannot exercise full jurisdiction if predecessors may tie their hands in the matter of requiring to be done any matter which is comprehended in the exercise of full jurisdiction; that is to say, each mayor and board of aldermen has a right, in their discretion, to say when paving is necessary. It is a discretion which vests in them at the time they choose to exercise it . . . if one mayor and board of aldermen can take away a

9

> part of the right to exercise full jurisdiction as to the streets, it would, to that extent, abridge the right which vests in the city to have its mayor and board of aldermen exercise full jurisdiction at all times.

*Id.* at 805. This Court in ***Edwards Hotel*** held that the ordinance was ultra vires.[3] *Id.* "If we were to hold otherwise, one set of city officers could defeat the powers delegated to the city and preclude a succeeding set of officers, however necessitous might be the cause, from . . . [using the powers granted it]." *Id.*

¶20. This Court also has held that a contract was *ultra vires* and unenforceable for "attempting to fix the compensation of a city employee to cover a period of employment extending beyond any reasonable limitation." ***Tullos***, 179 So. at 558-59. This Court held "it is beyond the power of municipal officers to bind their successors in office in the exercise of their discretionary authority to fix the compensation of employees . . . ." *Id.* at 558.

¶21. The Attorney General's Office consistently has advised political entities that they may not bind successors in office in the exercise of their discretionary authority unless there is express statutory authority to do so. The Attorney General also has warned that any agreement that violates this rule is voidable by successor boards. *See, e.g.*, *Jacks*, Op. Att'y Gen. No. 2010-00040 (Feb. 26, 2010) ("The Mississippi Supreme Court, as well as official opinions of this office, have long held that governing authorities may not bind successors in office in the exercise of their discretionary authority, including the leasing of county and

---

[3] *Ultra vires*, "A body exercising an invalid excess or power of authority." Black's Law Dictionary (9th ed. 2009).

municipal property, unless there is 'express statutory authority' to do so.").[4] Although Attorney General opinions are not binding on this Court, we may view them as persuasive authority. ***Poppenheimer v. Estate of Coyle***, 98 So. 3d 1059, 1066 (Miss. 2012).

### C.     *Entering into the Agreement was an exercise of discretionary authority rather than of mandatory authority.*

¶22.    Cleveland attempts to distinguish the case before us and contends that, when the Commission entered into this Agreement, the Commission was exercising mandatory, not discretionary, authority. Cleveland responds that the chancellor was correct in finding that the Agreement did not bind the Commission's discretionary powers. The statute governing regional commissions states that commissions "shall have the following *authority* and *shall pursue and promote* the following general purposes: . . . ." Miss. Code Ann. § 41-19-33(1) (Rev. 2013) (emphasis added). This includes the authority to "establish, own, *lease*, acquire, construct, build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilitative facilities and services . . . ." Miss. Code Ann. § 41-19-33(1)(a) (emphasis added). The chancellor found that, according to this section of the statute, it is mandatory that the Commission obtain appropriate facilities to provide services required under the law.

___

[4] *See also Lucas*, Op. Att'y Gen. No. 2009-00381 (Aug. 28, 2009) ("It has long been recognized in Mississippi that governing boards, elected and appointed, may not bind their successors in office by contract unless expressly authorized by law."); *Clayton*, Op. Att'y Gen. No. 2004-0329 (July 28, 2005) (finding no exception to the rule against binding successors for the authority to operate a center on property for a term of ninety-nine years); *Power*, Op. Att'y Gen. No. 2008-00016, (Feb. 8, 2008); *Latham*, Op. Att'y Gen. No. 2006-0064 (Jan. 19, 2007); *Connell*, Op. Att'y Gen. No. 2005-0459 (Oct. 15, 2005); *Belk*, Op. Att'y Gen. No. 2003-0527 (Oct. 3, 2003); *Moore*, Op. Att'y Gen. No. 200-0032 (Feb. 4, 2000).

¶23. The Commission argues this statute contains permissive, not mandatory language.[5] We agree with the Commission's interpretation of the statute. The statute grants the Commission the authority to provide facilities and services by a plethora of options. It does not mandate that the Commission own, build, construct, or lease anything. It may be mandatory for the Commission to administer mental health programs. After all, "[i]t shall be the *duty* of such regional commission to administer mental health/intellectual disability programs . . . ." Miss. Code Ann. § 41-19-33(1). But we believe *how* the Commission decides to administer these programs is discretionary. The Commission could have bought another building and converted it into a chemical-dependency facility. It could have hired a construction company to build the facility or conduct outpatient services. Simply put, the discretionary act here was signing the lease agreement to carry out its mandated function of administering mental health programs.

¶24. Besides, acquiring facilities is not the only power bestowed upon the Commission. For example, the Commission has the authority to enter into contracts with private entities for maintenance. Miss. Code Ann. § 41-19-33(1)(e). As we noted earlier, the Commission also has the authority "[t]o acquire, own and dispose of real and personal property." Miss. Code Ann. § 41-19-33(1)(m). Both of these are discretionary acts, and this Agreement frustrates the successor board's ability to exercise these powers.

---

[5] The Commission argues having "authority" does not mandate the exercise of that authority, and by its very nature, is discretionary. *See Authority*, Black's Law Dictionary (9th ed. 2009) (defining authority as "[t]he right or permission to act legally on another's behalf.").

### D. The Commission's statutory authority to lease and contract does not allow it to enter into leases and contracts for ninety-nine years.

¶25. Having determined that the Commission was exercising its discretionary authority when it entered into the Agreement, we must look to see if there is any statutory authority that allows it to enter into contracts or leases that bind successor boards. Our Legislature has granted many public entities the authority to enter into contracts and lease agreements. And the Legislature also has taken further steps by granting specific entities the power to enter into long-term agreements that exceed their governing members' terms. For example, the Legislature expressly has authorized state institutions of higher learning to enter into long-term leases that do not exceed thirty-five years. Miss. Code Ann. § 37-101-41 (Rev. 2014). Airport authorities may enter into leases not to exceed fifty years. Miss. Code Ann. § 61-5-11 (Rev. 2013). Section 31-8-3 of the Mississippi Code permits counties and municipalities to enter into lease agreements for facilities not exceeding twenty years. Miss. Code Ann. § 31-8-3 (Rev. 2010). (*See also* **Oktibbeha Cty. Bd. of Educ. v. Town of Sturgis**, 531 So. 2d 585 (Miss. 1988) (voiding a ninety-nine-year lease because the county was granted authority only to enter into a twenty-five-year, not a ninety-nine-year, lease).

¶26. Unlike these governing authorities, the Legislature has not granted mental health commissions the authority to enter into long-term contracts or leases. So the Commission argues that any contract the Commission enters into must be for either a term not exceeding four years, or it is voidable by subsequent commissions. Cleveland counters that if the Legislature had intended to authorize the Commission only to enter into contracts for the

13

remaining length of its term, then the Legislature easily could have placed that restriction in the statute.

¶27.   We agree with the Commission and reject Cleveland's argument. We evoke the rule that "ordinarily a new statute will not be considered as reversing long-established principles of law and equity unless the legislative intention to do so clearly appears." *Thorp Commercial Corp. v. Mississippi Road Supply Co.*, 348 So. 2d 1016, 1018 (Miss. 1977). The rule that current governing bodies may not bind their successors by contract in the exercise of their discretionary powers has been a long-established rule in Mississippi for more than a century. *See Edwards Hotel*, 96 Miss. 547. We do not believe that Section 41-19-33, when read as a whole, shows a clear legislative intent to abrogate the common-law rule against binding successors. Thus, we believe that, had the Legislature intended to grant the Commission authority to enter into contract and lease agreements for ninety-nine years and to bind successor boards, it specifically would have provided so in the statute.

¶28.   We hold that the Agreement binds successor commissions in the exercise of their discretionary authority to sell and convey the subject real property, to contract for maintenance, and to renegotiate the lease. The predecessor commission executed this Agreement without express statutory authority to do so. For these reasons, we find that the chancellor erred in not finding the Agreement was voidable as a matter of law at the Commission's discretion. Thus, we reverse the judgment of the Lee County Chancery Court and render a decision in favor of the Commission.

14

**II.** **Whether the Agreement is void *ab initio* as a matter of law based on its illegal interest rate, fixed rental terms, and unreasonable duration.**

¶29. Because our decision on the first issue is dispositive, we will not address this second issue. ***Deviney Constr. Co. v. Marble***, 60 So. 3d 797, 803, ¶ 15 (Miss. 2011).

## CONCLUSION

¶30. The judgment of the Lee County Chancery Court is reversed. We render judgment in favor of the Commission, finding that the Agreement was voidable as a matter of law at the Commission's discretion, because the ninety-nine-year Agreement binds successor commissions in the exercise of their discretionary authority without express statutory authority to do so.

¶31. **REVERSED AND RENDERED.**

**RANDOLPH, P.J., LAMAR, KING AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., COLEMAN AND MAXWELL, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶32. I respectfully dissent. I would hold that the rule against binding successors is inapplicable in this case. Because Section 41-19-33 evinces a clear legislative intent to abrogate the common law rule against binding successors, the rule is inapplicable to the Commission's contract with Cleveland. I also would hold that the contract was not void *ab initio*. I would affirm the judgment of the Chancery Court of Lee County in favor of Cleveland.

15

**A. Because Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors, the rule is inapplicable to the Commission's contract with Cleveland.**

¶33.    The rule against bindings successors is a common law rule under which, absent express statutory authority, municipal officers may not bind their successors in office in the exercise of their discretionary authority. ***Smith v. Mitchell***, 190 Miss. 819, 1 So. 2d 765, 767 (1941). The rule exists so that "each mayor and board of aldermen may in their discretion determine when the powers conferred upon them by law shall be exercised and that one mayor and board of aldermen may not bind their successors to carry out contracts made by the former seeking to take away from the latter rights and powers conferred upon them by law." ***Id.*** (citing ***Edwards Hotel & City R. Co. v. City of Jackson***, 96 Miss. 547, 51 So. 802 (1910)). The "powers of a municipality are given to it, not to the particular [persons] who hold the office." ***Edwards Hotel***, 96 Miss. 547, 51 So. at 805.

¶34.    Section 41-19-33(1) states that "[i]t *shall be the duty* of such regional commission to administer mental health/intellectual disability programs," and that "a regional commission . . . *shall pursue and promote the following general purposes*: (a) [t]o establish, own, lease, acquire, construct, build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilitative facilities and services designed to serve the needs of the people of the region so designated . . . ." Miss. Code Ann. § 41-19-33(1) (Rev. 2013) (emphasis added). This statute mandates that the Commission administer mental health programs. *Id.* It also mandates that the Commission "pursue and promote" the existence of mental health facilities. *Id.* As the majority concedes, the statute allows the Commission no

16

choice in whether it administers mental health programs and pursues and promotes the existence of mental health facilities; rather, the Commission must do so to fulfill its statutory mandate. In fact, if the Commission "does not meet the minimum standards and minimum required services established for certification [by the State Board of Mental Health]" it "shall be ineligible for state funds from Medicaid reimbursement or other funding sources for those services." Miss. Code Ann. § 41-19-33(1)(a) (Rev. 2013).

¶35. Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors when the Commission enters into contracts to fulfill its statutory mandate. Generally, this Court does not consider a new statute "as reversing long-established principles of law and equity unless the legislative intention to do so clearly appears." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1029 (Miss. 2011) (quoting *Thorp Commercial Corp. v. Miss. Road Supply Co.*, 348 So. 2d 1016, 1018 (Miss. 1977)). Not only does Section 41-19-33 contain language expressly abrogating the common law rule; but the statute, read as a whole, evinces legislative intent for the Commission to enter into contracts free from the rule against binding successors, because the rule would frustrate the Commission's ability to carry out its statutory directives.

¶36. In drafting and enacting Section 41-19-33, the Legislature included express language to the effect that the rule against binding successors does not apply to a contract such as the one at issue today. Subsection (1)(l) states that "[a]ny money borrowed, debts incurred or *other obligations* undertaken by a commission, regardless of whether borrowed, incurred or undertaken before or after March 15, 1995, *shall be valid, binding and enforceable* if it or

17

they are borrowed, incurred or undertaken for any purpose specified in this section and otherwise conform to the requirements of this paragraph." Miss. Code Ann. § 41-19-33(1)(l) (Rev. 2013) (emphasis added). The Commission's contract with Cleveland for the construction, lease, and maintenance of a chemical dependency facility was an "other obligation" undertaken by the Commission to fulfill its statutory purpose under Section 41-19-33(1)(a). Section 41-19-33(1)(l) clearly provides that such an obligation "shall be valid, binding and enforceable . . . ." Miss. Code Ann. § 41-19-33(1)(l). The statute further provides that such an obligation "shall be valid, binding and enforceable if . . . incurred . . . before or after March 15, 1995 . . . ." Miss. Code Ann. § 41-19-33(1)(l). Because obligations incurred before March 15, 1995, are "valid, binding and enforceable, and obligations incurred after March 15, 1995, are "valid, binding and enforceable," the Commission's obligation to Cleveland, which was incurred in June 2000, was "valid, binding and enforceable." Section 41-19-33(1)(l), which plainly states that obligations incurred by the Commission in furtherance of its statutory purposes before or after March 15, 1995, are "valid, binding and enforceable," clearly expresses a legislative intent to abrogate the rule against binding successors when the Commission incurs an obligation in furtherance of a statutory purpose. In fact, the statute could not be more explicit.

¶37. Not only does Section 41-19-33(1)(l) expressly abrogate the rule against binding successors, but a plain reading of the whole statute shows that the Legislature did not intend for the rule to apply to the Commission's performance of its statutory duties. This is because, by severely limiting the Commission's ability to contract, application of the rule would

18

thwart the Commission's statutory mandate. Regardless of whether a statute is ambiguous, "the ultimate goal of this Court in interpreting a statute is to discern and give effect to the legislative intent." *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). This Court considers a statute as a whole to determine legislative intent. *Lawson*, 75 So. 3d at 1029 (quoting *Manufab, Inc. v. Miss. State Tax Comm'n*, 808 So. 2d 947, 949 (Miss. 2002)). "In construing a statute, the Court must seek the intention of the Legislature, and knowing it, must adopt that interpretation which will meet the real meaning of the Legislature." *Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927, 929 (Miss. 2006).

¶38. This Court has recognized that a regional mental health-mental retardation commission's responsibilities under Section 41-19-33 are "fairly broad." *Region VII, Mental Health-Mental Retardation Ctr. v. Isaac*, 523 So. 2d 1013, 1016 (Miss. 1988). Indeed, Section 41-19-33 grants broad authority to the Commission to enter into many types of contracts in order to fulfill its statutory duty "to administer mental health/intellectual disability programs certified and required by the State Board of Mental Health." Miss. Code Ann. § 41-19-33(1)(1) (Rev. 2013). To fulfill this purpose, in addition to the powers discussed above to establish, own, lease, acquire, construct, build, operate, and maintain mental health facilities, the Commission is authorized "[t]o enter into contracts and to make other arrangements as may be necessary, . . . with the United States government, the government of the State of Mississippi and such other agencies or governmental bodies . . . for the purpose of establishing . . . facilities and services for the care and treatment of persons" suffering from a variety of mental illnesses, including drug abuse. Miss. Code Ann.

19

§ 41-19-33(1)(d). The Commission also is expressly authorized, as it did in this case, "[t]o enter into contracts and make such other arrangements as may be necessary with any and all private businesses, corporations, . . . proprietorships or other private agencies . . ." for the same purposes. Miss. Code Ann. § 41-19-33(1)(e). The Commission must employ and compensate necessary personnel and acquire necessary hazard, casualty, workers' compensation, and professional liability insurance policies. Miss. Code Ann. § 41-19-33(h), (i), (j). The Commission can enter into "agreements or contracts" to provide programs and services for persons with mental illness. Miss. Code Ann. § 41-19-33(1)(k). To fulfill the purposes specified by Section 41-19-33, the Commission is empowered to "borrow money from private lending institutions . . . [and] pledge collateral, including real estate, to secure the repayment of money borrowed . . . ." Miss. Code Ann. § 41-19-33(1)(l). The Commission can "acquire, own and dispose of real and personal property." Miss. Code Ann. § 41-19-33(1)(m). The Commission must "provide alternative living arrangements for persons with serious mental illness . . . ." Miss. Code Ann. § 41-19-33(1)(t). And the Commission is authorized to make purchases and enter into contracts for purchasing. Miss. Code Ann. § 41-19-33(1)(u). The Commission "shall have the authority to create and operate a primary health clinic." Miss. Code Ann. § 41-19-33(1)(x). Finally, the Commission is directed to "take any action which will promote, either directly or indirectly, any and all of the foregoing purposes." Miss. Code Ann. § 41-19-33(1)(y).

¶39. Each regional commissioner is appointed for a four-year term. Applying the rule against binding successors to the Commission's actions under Section 41-19-33 would mean

that the Commission could not enter into any contract with a duration of longer than four years. Further, most of the Commission's contracts would be of even shorter duration because they would be entered into during the existing commissioners' terms of office. As detailed above, Section 41-19-33 authorizes the Commission to enter into a variety of contracts, including, but not limited to, leases, secured and unsecured loans, employment contracts, and insurance policies, for the fulfillment of its statutory purpose. It inconceivable that the Commission could carry out its broad statutory mandate to provide mental health services to the region if the maximum possible duration of its contracts was, at best, four years. Therefore, a consideration of Section 41-19-33 as a whole indicates that the Legislature intended in this instance to abrogate the rule against binding successors.

¶40. Yet another feature of Section 41-19-33 evinces the obvious legislative intent that the rule against binding successors does not apply. Under the rule of *inclusion unius est exclusio alterius*,

> where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classification as those enumerated.

*Lee v. Alexander*, 607 So. 2d 30, 36 (Miss. 1992) (quoting *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975)). That is, when a statute specifically mentions one circumstance, the implication is that the Legislature intended to exclude other circumstances not mentioned. *Id.* In Section 41-19-33, the Legislature expressly limited the Commission's power to enter into certain types of contracts on an indefinite basis. For managed care contracts; contracts that provide facilities and services at

a discount; contracts by which the Commission assumes financial risk for provision or delivery of services; contracts for the financial support of nonprofit organizations; and contracts to form, operate, or participate in a managed care entity, the Commission, if its action would affect more than one region, "must have prior written approval of the Department of Mental Health before [the action is] initiated and annually therafter." Miss. Code Ann. § 41-19-33(1)(n)-(r) (Rev. 2013). These provisions show that the Legislature fully considered appropriate limitations on the Commission's power to contract and specified them in the Commission's governing statute. The inclusion of these express limitations on the Commission's power to contract indicates that the Legislature intended no other limitations to apply.

¶41.     Additionally, considering, as I must, Section 41-19-33 as a whole also belies the majority's position that the Commission's contract with Cleveland impermissibly impeded its statutory authority "[t]o acquire, own and dispose of real and personal property." Miss. Code Ann. 41-19-33(1)(m). To reach that conclusion, the majority relies on *American Oil v. Marion County*, 187 Miss. 148, 192 So. 296 (1939). But the statute at issue in *American Oil* was materially different from Section 41-19-33. In *American Oil*, a statute gave the board of supervisors the authority to sell and convey county property, and the board of supervisors leased certain county property for twenty-five years. This Court held that the lease exceeded the board's statutory authority because the statute did not grant the board the power to lease. In this case, Section 41-19-33 grants the Commission both the power to lease and the power to sell real property. From a consideration of the statute as a whole, and giving

22

effect to all its provisions, the majority errs by holding that the Commission's statutory power to sell must defeat its statutory power to lease.

¶42.    In conclusion, Section 41-19-33 manifests a clear legislative intent to abrogate the common law rule against binding successors. Section 41-19-33(1)(l) expressly states that obligations incurred by the Commission in furtherance of its statutory purpose are valid, binding, and enforceable. Considering Section 41-19-33 in its entirety, the Legislature's broad grant of authority to the Commission to enter into a wide variety of different contracts to carry out its statutory purpose clearly indicates that the Legislature intended to abrogate the common law rule against binding successors as applied to the Commission. Its inclusion of specific limitations on the Commission's power to enter into certain types of contracts indicates that, had the Legislature intended to subject the Commission to further limitations on its ability to contract, it would have specified these limitations in the statute. The majority ignores these clear expressions of legislative intent and finds that the contracts of a regional mental health-mental retardation commission will be limited by the rule against binding successors. It is inconceivable that regional mental health-mental retardation commissions will be able to fulfill their statutory mandate after today's case, given that they may enter into contracts no longer than the remaining terms of their board members, with a maximum possible length of four years.

**B. The Commission's contract with Cleveland was not void *ab initio*.**

¶43.    The Commission argues that, notwithstanding the rule against binding successors, its contract with Cleveland was void *ab initio*. In contrast to a contract that is voidable at the

23

request of one of the parties, a contract is void *ab initio* if it seriously offends law or public policy. ***Hood ex rel. State v. Barbour***, 958 So. 2d 790, 815 (Miss. 2007). The Commission contends that the contract was void *ab initio* because of its duration, or alternatively, because the contract is, in actuality, a contract that allowed the Commission to borrow money from Cleveland at an illegal interest rate.

¶44.   I would hold that neither law nor public policy is offended by the Commission's contract with Cleveland. This was an arm's length transaction between two parties represented by counsel. At the hearing, the Commission's chairman of the board, Mark Ormon, testified that the Commission was "desperate" to obtain a new chemical dependency facility to fulfill its statutory directives. The Commission's minutes reflect that, after its negotiations with other potential builders fell through, it contacted Cleveland and began negotiations. After negotiation of the contract terms was complete, the Commission's members met and approved the "Contract and Lease Agreement" with Cleveland.

¶45.   The agreement reached by the Commission and Cleveland provided that the Commission would lease the property to Cleveland for ninety-nine years. Cleveland promised to construct on the property a chemical dependency facility and parking lot, along with landscaping, at his own expense. The Commission would pay Cleveland $18,000 per month in rental payments as long as it had available state and federal funds sufficient to make the payments. In the event of the Commission's inability to pay the rent, the Commission would quitclaim its interest in the property to Cleveland. The contract also provided for Cleveland's upkeep of the facility's slab, roof, and outside walls for the duration of the contract.

¶46. The Commission requests that this Court declare the contract void *ab initio* due to its ninety-nine year duration. In support, it cites a Fifth Circuit case, ***Hoskins v. City of Orlando***, 41 F.2d 901 (5th Cir. 1931). In ***Hoskins***, the City of Orlando assumed a ninety-eight year lease of an apartment building. *Id.* at 904. The court held that no statutory authority existed for the municipality's assumption of the lease, the municipality had identified no appropriate municipal use for the lease, and the lease was a "mere investment" outside the scope of municipal authority. *Id.* The court stated that "[a]n apartment house in operation is so remote from the ordinary purposes of municipal government that the purchase of an interest in it is not presumptively valid, but apparently invalid, and the declaration should have alleged, if it could be done, some proper municipal use intended for it." *Id.* The court also found that the contract's duration was too long because, absent express statutory authority, "municipalities, even in their proprietary functions, may contract only for a reasonable time." *Id.* at 905.

¶47. *Hoskins* is not binding authority on this Court, and it is easily distinguished from this case. The Commission is not a municipality, but a political subdivision with a specific statutory grant of authority. And the Commission had clear statutory authority to enter into a lease of this duration. Section 41-19-33 provides that the Commission has a *"duty . . . to administer mental health/intellectual disability programs,"* and that it *"shall pursue and promote the following general purposes*: (a) [t]o establish, own, lease, acquire, construct, build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilitative facilities and services designed to serve the needs of the people of

25

the region so designated . . . ." Miss. Code Ann. § 41-19-33(1)(a) (Rev. 2013) (emphasis added). The Commission is expressly authorized "[t]o enter into contracts and make such other arrangements as may be *necessary* with any and all private businesses, corporations, . . . proprietorships or other private agencies, whether organized for profit . . ." to fulfill its statutory duty. Miss. Code Ann. § 41-19-33(1)(e) (emphasis added). Its obligations undertaken "for any purpose specified" in Section 41-19-33 "shall be *valid, binding and enforceable*." Miss. Code Ann. § 41-19-33(1)(l) (emphasis added). And to promote its statutory purposes, the Commission is expressly authorized to "take *any* action." Miss. Code Ann. § 41-19-33(1)(y) (emphasis added).

¶48. The chancellor found from the undisputed testimony at the hearing that the Contract and Lease Agreement fulfilled the Commission's statutory purpose under Section 41-19-33(1)(a). Ormon testified that the facility at issue is the only inpatient chemical dependency facility in the region. The Commission's executive director, Robert Smith, testified that the facility successfully meets the needs of the Commission and those suffering from drug and alcohol dependency. He testified that no other facility is necessary, and that the Commission has no trouble paying the $18,000 per month rent. Plainly, the Commission's contract with Cleveland allowed it to fulfill its statutory purpose to provide "facilities . . . designed to serve the needs of the people of the region . . . ." Miss. Code Ann. § 41-19-33(1) (Rev. 2013). The Commission's contract with Cleveland fulfilled its statutory purpose, and Section 41-19-33(1) authorized it to enter into the contract.

26

¶49. The Commission also argues that the contract actually was an agreement to borrow money from Cleveland at an illegal interest rate. The Commission bases this argument on an alternative finding by the chancellor that the contract was an agreement incurred under Section 41-19-33(1)(l). That section grants the Commission the following authority:

> To borrow money from private lending institutions in order to promote any of the foregoing purposes. A commission may pledge collateral, including real estate, to secure the repayment of money borrowed under the authority of this paragraph. Any such borrowing undertaken by a commission shall be on terms and conditions that are prudent in the sound judgment of the members of the commission, and the interest on any such loan shall not exceed the amount specified in Section 75-17-105. Any money borrowed, debts incurred or other obligations undertaken by a commission, regardless of whether borrowed, incurred or undertaken before or after March 15, 1995, shall be valid, binding and enforceable if it or they are borrowed, incurred or undertaken for any purpose specified in this section and otherwise conform to the requirements of this paragraph.

Miss. Code Ann. § 41-19-33(1)(l) (Rev. 2013). Mississippi Code Section 75-17-105 provides, in pertinent part, that "[u]nless otherwise provided by law, tax anticipation notes and reappraisal notes issued by the State of Mississippi or a county, municipality or political subdivision thereof . . . shall bear interest at a rate not to exceed eleven percent (11%) per annum." Miss. Code Ann. § 75-17-105 (Rev. 2009).

¶50. The chancellor found that this subsection allowed the Commission to incur an obligation for the construction of the facility that would be "valid, binding and enforceable" if undertaken to fulfill the Commission's statutory purpose. The chancellor also found that, even if the contract was considered a loan from Cleveland to the Commission for the construction of the facility, no evidence had been presented that the interest on the loan exceeded "the amount specified in Section 75-17-105." The Commission argues that contract

27

was void *ab initio* because it was a loan from Cleveland to the Commission, and the interest on the loan exceeded the 11% maximum interest rate allowed by Section 75-17-105.

¶51. I would find that the Commission's argument that the contract constituted an illegal loan is erroneous for two reasons. First, the contract cannot be considered to be a loan because, by its terms, the contract is a construction, lease, and maintenance agreement. The contract specifically states that the $18,000 per month to be paid by the Commission to Cleveland is a rental payment. In determining the meaning of a contract, this Court looks to the four corners of the agreement. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). "[C]ourts are not at liberty to infer intent contrary to that emanating from the text at issue." *Id.* Therefore, under the contract's unambiguous terms, the $18,000 per month cannot be deemed installments on a loan repayment.

¶52. Second, the Commission relies on information outside the evidence to conclude that the purported loan repayment amount includes an illegal interest rate. The Commission argues that "if the Agreement is a contract to 'borrow money' and the eighteen-thousand-dollar payment does represent a monthly payment that must be paid for a term of ninety-nine years to pay off the loaned amount of $807,672.82, using simple math, these terms produce an interest rate of 26.743%, more than double the 11% maximum . . . ." At the hearing, the Commission attempted to introduce a cost report showing that Cleveland's cost to build the facility was $807,672.82. Cleveland objected, and the chancellor reserved ruling on the issue, but in the end did not accept the cost report into evidence.[6] Therefore, neither the

---

[6] Cleveland did not present any evidence of the cost of construction.

28

Commission nor this Court can rely on the cost report as evidence of the facility's cost of construction.

¶53.   I would reject the Commission's argument that its contract with Cleveland was void *ab initio*.

### IV. Conclusion

¶54.   I would hold that the plain language of Section 41-19-33 manifests a clear legislative intent that the rule against binding successors does not apply to the Commission's entry into a contract that fulfills its statutory mandate. Further, I would hold that the Commission's contract with Cleveland was not void *ab initio*. I would affirm the chancellor's judgment in favor of Cleveland.

**DICKINSON, P.J., COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION.**